**David MONACI, Petitioner,**

**v.**

**STATE HORSE RACING COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 2, 1998.

Decided Aug. 31, 1998.

Howard A. Finkelman, Philadelphia, for petitioner.

Jorge M. Augusto, Harrisburg, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

David Monaci (Monaci) appeals from an adjudication of the Pennsylvania State Horse Racing Commission (Commission) finding that he violated Section 213(f)(2) of the Race Horse Industry Reform Act (Act)[1] imposing a $1,000 fine and permanently revoking his race horse trainer's license.

Monaci has been a licensed race horse trainer since 1982. In 1996, Monaci was the trainer for Accession, a racehorse owned by Delserro Thoroughbred Racing Stables, Inc. On March 18, 1996, Accession finished first in the eighth race at the Philadelphia Park Race Track (Track). In accordance with 58 Pa.Code § 163.318(a)[2] and 58 Pa.Code § 163.318(b),[3] a post-race blood and urine sample was taken from Accession and divided into two parts: the primary sample and the split sample. On March 19, 1996, the Commission sent the primary sample to the Pennsylvania Equine Toxicology Research Laboratory at West Chester University (West Chester) where it tested positive for the drug Etorphine.[4] On March 26, 1996, Monaci received a "Notification of Medical Violation" based upon the West Chester lab results. He requested that the split sample being held in the detention barn at the Track be tested at the Equine Medication Surveillance Laboratory of the Analytical Systems Laboratories of Louisiana State University School of Veterinary Medicine in Baton Rouge, Louisiana (LSU). On April 1, 1996, the split sample was shipped via Airborne Express to LSU, but when the package arrived, it was empty; both the split sample and the check for payment were missing. On April 22, 1996, the Commission advised Monaci that the split sample never arrived to LSU and presented him with a "Notification

---

1. Act of December 17, 1981, P.L. 435, *as amended,* 4 P.S. § 325.213(f)(2). Section 213(f)(2) of the Act provides:

    (f) The commissions may suspend, refuse to renew or revoke a license issued under this section, if it shall determine that: ... **(2)** ... [T]he experience, character or general fitness of any applicant or licensee is such that the participation of the person in horse racing or related activities would be inconsistent with the public interest, convenience or necessity or with the best interests of racing.

2. 58 Pa.Code § 163.318(a) provides in relevant part:

    The test sample of the winner of each race and of horses finishing in the money in a race for which there is exotic wagering shall be taken, and a test sample shall be taken from other horses as the Commission or stewards may direct.

3. 58 Pa.Code § 163.318(b) provides in pertinent part:

    The urine or blood sample secured under the procedures set forth in subsection (a), shall be split into two parts. One portion shall be delivered to the Commission's official chemist for testing. The remaining portion shall be maintained at the detention barn from where it was secured ... (1) ... In every event, "primary" and "split" portions of a sample shall always be taken at the same time and shall be of the same substance. (2) Blood samples shall initially be taken in a quantity to insure that ample portions shall be obtained.

4. Etorphine is a synthetic opiate derivative that acts as a central nervous system stimulant in race horses at very low doses.

and Packaging of Split Sample" stating that the remainder of the primary sample was going to be shipped by the Commission from West Chester to the Analytical Toxicology Laboratory, College of Veterinary Medicine at Ohio State University (OSU) for testing.[5] The sample arrived at OSU and tested positive for Etorphine.

On May 13, 1996, the Board of Stewards of the Track issued a notice charging Monaci with violating the rules and regulations of the Commission at 58 Pa.Code §§ 163.302(a)(1),[6] 163.303(a), (b) and (c),[7] 163.309 [8] and 163.521(f) [9] as a result of Accession's sample testing positive for the drug Etorphine, and scheduled a hearing on those charges for May 31, 1996. After considering the testimony presented at the hearing,[10] the Board of Stewards found that Monaci had violated 58 Pa.Code §§ 163.302(a)(1), 163.303(a), (b) and (c), 163.309, and 163.521(f). It suspended Monaci's race horse trainer's license for four years effective June 13, 1996 through June 12, 2000, and fined him $1,000. Monaci appealed the ruling to the Commission.[11]

**5.** The Notification contained a statement that Monaci refused to sign the form.

**6.** 58 Pa.Code § 163.302(a)(1) provides:
**58 Pa.Code § 163.302. Foreign drugs, medications or substances.**
(a) *Policy.* The purpose of this section and §§ 163.303–163.318 is to protect the integrity of horse racing, to guard the health of the horse and to safeguard the interests of the public and the racing participants through the prohibition or control of drugs and medications or substances foreign to the natural horse. In this context: **(1)** A horse participating in a race may not carry in its body a substance foreign to the natural horse except as otherwise provided.

**7.** 58 Pa.Code § 163.303(a), (b) and (c) provide:
**58 Pa.Code § 163.303. Prohibition; prima facie evidence; disqualification.**
(a) A horse participating in a race may not carry in its body a substance except as provided in § 163.304 (relating to substances of therapeutic value). **(b)** A finding by the chemist that a foreign substance is present in the test sample shall be prima facie evidence that the foreign substance was administered and carried in the body of the horse while participating in a race. This finding shall also be taken as prima facie evidence that the trainer and his agents responsible for the care or custody of the horse has [sic] been negligent in the handling or care of the horse. **(c)** A finding by the chemist of a foreign substance or an approved substance used in violation of this section and §§ 163.301, 163.302 and 163.304–163.308 in a test sample of a horse participating in a race may result in the horse being disqualified from purse money or other awards except for purposes of parimutuel wagering, which shall be in no way affected.

**8.** 58 Pa.Code § 163.309 provides:
**58 Pa.Code § 163.309. Responsibilities to guard against administration of drugs.**
The owner, trainer, groom or other person who is charged with the responsibility of the horse shall protect the horse against the administration or attempted administration, either internally or externally, of a drug to the horse. If the stewards determine that an owner, trainer, groom or other person has failed to protect the horse they may immediately suspend the trainer, groom or other person and refer the matter to the Commission for final disposition.

**9.** 58 Pa.Code § 163.521(f) provides in relevant part:
**58 Pa.Code § 163.521. Duties of trainers.**

❖ ❖ ❖

**(f)** A trainer shall be responsible for the condition of a horse trained by him. . . .

**10.** The Board of Stewards heard testimony from: Dr. Reynold Schmidt (Dr. Schmidt), chief state veterinarian for the Commission; Frank Railing (Railing), a lab technician at West Chester; Frank Gleason (Gleason), administrative officer for the Track; John Olszewski (Olszewski) and George Lobley (Lobley), special investigators for the Commission; and Dr. Craig Goldblatt (Dr. Goldblatt), associate state veterinarian for the Commission. The testimony from these witnesses included: the origins and composition of the primary and split samples; the circumstances surrounding the packaging and shipment of the split sample to LSU; and the subsequent collection and shipment of the remainder of the primary sample to OSU.

**11.** At the same time, Monaci filed a petition for supersedeas with the Commission which was denied. He then filed an application for an emergency hearing, request for special injunction and application for special relief (emergency supersedeas), and appealed the Commission's denial of his initial motion for supersedeas to this Court. After a hearing on Monaci's motion for special injunction and application for special relief (emergency supersedeas), this Court, in an unreported opinion, vacated the Commission's denial of Monaci's motion for supersedeas and granted a stay pending review by the Commission. *David Monaci v. Pennsylvania State Horse Racing Commission*, No. 1542 C.D.1996 (filed June 17, 1996). In an unreported opinion, we quashed Monaci's petition for review of the Commission's

On August 26, 1997, at a *de novo* hearing before the Commission,[12] testimony was presented regarding the missing split sample and the subsequent investigation into the circumstances surrounding its theft. Anton Leppler (Leppler), administrator of enforcement for the Commission, testified that the Commission's concern that a Track employee may have stolen the split sample was piqued because another Track employee mentioned a bribery attempt to a supervisor who then relayed the information to him. Leppler stated that he contacted Dr. Steven Barker (Dr. Barker) at LSU to determine whether the split sample had arrived, and when Dr. Barker said that he received the container but not the split sample, he and Gleason contacted the Pennsylvania State Police because he felt that the theft rose to a "level of criminality" that should be investigated by the Pennsylvania State Police.[13] Leppler indicated that he and Gleason turned the container over to the Pennsylvania State Police for further investigation.

As to the investigation by the Pennsylvania State Police, Trooper George L. Strand (Trooper Strand) testified that he began his investigation after being contacted by Leppler and Gleason and receiving the package containing some fingerprints. Referring to his investigation report, he stated that farm worker Dawn Alstatt (Alstatt) reported to the Commission on April 1, 1996, that on March 31, 1996, trainer Frank Geraci (Geraci) approached her stating that his friend was in trouble and offering her $2,000 to switch a urine sample; she responded that she did not know if she would and walked away. Still referring to his investigation report, Trooper Strand indicated that on the same day, stable employee Juan Velez (Velez), boyfriend to Alstatt, was stopped by Geraci, who stated

that his friend was in a lot of trouble and asked if his girlfriend would switch the dates of a urine sample to which Velez responded that he did not know. He further indicated that later that day, Geraci stopped Velez again stating that "his friend Monaci" was in trouble and asking whether Alstatt would help him; Velez said that Alstatt refused.

Trooper Strand testified that on April 11, 1996, the styrofoam container from Dr. Barker was taken into custody and tested for latent fingerprints which were detected. He stated that he obtained fingerprints from several witnesses, including Dr. Goldblatt, Dr. Schmidt, William McCool, a worker in the detention barn at the Track, and Geraci. Trooper Strand indicated that Monaci refused to talk with him and was not fingerprinted. He testified that the witnesses' fingerprints were compared with fingerprints retrieved from the styrofoam container evidence tape by Trooper Timothy Boyd (Trooper Boyd). Trooper Boyd testified that after his initial examination of the two identifiable fingerprints and the witnesses' fingerprints, he concluded that the fingerprints found on the styrofoam container were solely Geraci's. Trooper Strand stated that on August 2, 1996, he filed charges with the criminal division of the Bucks County Clerk of Courts charging Geraci with (1) two counts of bribery in official and political matters, (2) criminal attempt, (3) two counts of theft by unlawful taking or disposition and (4) obstruction of the administration of law or other governmental functions. On cross-examination, Trooper Strand indicated that Geraci never stated that he was employed or hired by Monaci or that Monaci was in any way involved with the missing split sample, and that no court had proven any connection

denial of his initial motion for supersedeas for lack of a reviewable final order. *David Monaci v. Pennsylvania State Horse Racing Commission*, No. 1542 C.D.1996 (filed January 22, 1997).

**12.** Monaci appeared *pro se* during the proceedings before the Commission.

**13.** Leppler testified that he asked Dr. Barker to be very careful with the styrofoam container. He stated that Dr. Barker told him that he and his staff had used rubber gloves to examine the container and found that where there had been

evidence tape around the four corners of the container, he discovered "surgical cuts" in the tape and the placement of clear tape on top "to look as if the integrity of the sample was still maintained." He indicated that Dr. Barker mentioned that there was no masking tape on the container causing Leppler to conclude that the container received by Dr. Barker was not the same container that left Philadelphia because the container that started in Philadelphia was sealed with masking tape. He testified that he told Dr. Barker to take pictures of the container and return it to him in Philadelphia.

between Monaci and Geraci. He testified that Geraci turned himself in and on February 5, 1997, pled *nolo contendere* to the charges.[14]

Rejecting Monaci's argument that because the split sample was lost while in the custody of the Commission and could not be tested, the charges against him must be dismissed, and concluding that the primary sample and the split sample were the same sample, the Commission affirmed the $1,000 fine imposed by the Board of Stewards and ordered the permanent revocation of Monaci's race horse trainer's license. It found that because the primary sample and the split sample were "interchangeable", the test results from West Chester and OSU were "final and controlling". The Commission also concluded that there was substantial evidence to demonstrate that Monaci participated in the theft of the split sample. It found that:

> [a] clear connection can be made to [Monaci] because Mr. Geraci mentioned [Monaci's] name to a prosecution witness and the fact that only [Monaci] ... would benefit by the acts of Mr. Geraci. Further, [Monaci] and Mr. Geraci had an established relationship. The Commission can reasonably conclude that [Monaci] participated in

the theft of the split sample. At a minimum, the record established that [Monaci] is guilty of the appearance of impropriety in the theft of the split sample. [Monaci's] connection to the criminal conduct of Mr. Geraci has been sufficiently demonstrated ... [Monaci] participated in the theft, not the loss, of the split sample. [Monaci] cannot now be heard to attempt to benefit from his own serious and flagrant violation of the rules of racing.

The instant appeal by Monaci followed.[15]

On appeal, Monaci contends that the Commission committed an error of law tantamount to a denial of his administrative due process rights because 58 Pa.Code § 163.318(d)(1) prohibits the Commission from imposing a penalty upon him absent confirming test results from the split sample.[16] 58 Pa.Code § 163.318(d)(1) provides:

> (1) if the test of the split portion does not substantially confirm the findings of the original laboratory, the Commission will not consider the sample to constitute a prima facie violation of this chapter and no penalty will be imposed.

Monaci argues that without the split sample to confirm the findings of the primary sam-

---

**14.** On June 19, 1996, the Commission suspended Geraci's horse trainer's license and denied him all privileges to the grounds of all racetrack enclosures for a period of two years retroactive to May 24, 1996. Geraci appealed to this Court and we affirmed in an unreported opinion at *Frank Geraci, Jr. v. Pennsylvania State Horse Racing Commission*, No. 1726 C.D.1996 (filed November 7, 1996). For purposes of our analysis, Geraci's plea of *nolo contendere* to the charges of attempted bribery and theft of the split sample is treated as if he pled guilty to the crimes charged. *Commonwealth v. Nelson*, 446 Pa.Super. 240, 666 A.2d 714 (1995), *petition for allowance of appeal denied*, 544 Pa. 605, 674 A.2d 1069 (1996); *see also Commonwealth v. Perillo*, 426 Pa.Super. 1, 626 A.2d 163 (1993), *petition for allowance of appeal denied*, 535 Pa. 674, 636 A.2d 633 (1993) (same); *Commonwealth v. Boatwright*, 404 Pa.Super. 75, 590 A.2d 15 (1991) (same).

**15.** This Court's scope of review of an adjudication of the Commission is limited to a determination of whether constitutional rights were violated, whether findings of fact are supported by substantial evidence of record, or whether an error of law has been committed. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Pankewicz v. Pennsylvania, State Horse Racing*

*Commission*, 127 Pa.Cmwlth. 601, 562 A.2d 917 (1989).

**16.** Monaci further asserts that he did not receive a full and fair administrative hearing before the Commission entered its order because the hearing officer did not allow him to (1) submit a brief, (2) submit requests for findings of fact, (3) submit requests for conclusions of law or (4) request oral argument, all in contravention of 58 Pa.Code § 165.183(p). 58 Pa.Code § 165.183(p) provides in relevant part:

> At the conclusion of the hearing, parties shall be afforded an opportunity to submit briefs and requests for findings of fact and conclusions of law ... A party may request oral argument before the Commission as a matter of right.

At the conclusion of the hearing before the Commission, Monaci was asked if he had any other evidence or exhibits that he wished to produce before the hearing officer. Monaci only submitted a prepared brief. He neither requested nor offered to submit a request for findings of fact or conclusions of law. Based upon the above, we find that Monaci's assertion that he did not receive a full and fair administrative hearing is without merit.

ple, the Commission cannot consider the findings of the primary sample to constitute *prima facie* evidence of a violation sufficient to impose a fine or permanently revoke his race horse trainer's license.

While 58 Pa.Code § 163.318(d)(1) does provide that the Commission cannot consider the test results from the primary split sample alone to constitute *prima facie* evidence of his violation of the Commission's regulations, *see Delaney v. State Horse Racing Commission,* 112 Pa.Cmwlth. 407, 535 A.2d 719 (1988), there is an exception contained in 58 Pa.Code § 163.318(e) that provides:

> [i]f an Act of God, power failure, strike or *other action* prevents a retest from being made *which is beyond the control of the Commission,* the results of the primary official test shall be accepted as prima facie evidence. (Emphasis added).

Monaci contends that this provision is not applicable to his case because the split sample was stolen while in the custody and control of the Commission's agent, Airborne Express, such that its theft was not "beyond the control of the Commission".[17] In effect, Monaci is arguing that the Commission had an obligation to thwart the theft, and if it did not, then the exception did not apply.

■ Contrary to Monaci's assumption, theft, barring active participation, is always an act that is outside of a party's control. *See, e.g., Sebelin v. Yamaha Motor Corp., USA,* 705 A.2d 904 (Pa. Superior Ct.1998) (in suit for premises and product liability against manufacturer of all-terrain vehicle, theft of vehicle from police impound did not warrant summary judgment on spoliation grounds because causation defenses remained intact and theft is act out of control of both parties to suit); *Sun Yau Ko v. Lincoln Savings Bank,* 99 A.D.2d 943, 473 N.Y.S.2d 397 (N.Y.App. Div.), *aff'd,* 62 N.Y.2d 938, 479 N.Y.S.2d 213,

468 N.E.2d 51 (1984) (loss of safe deposit box due to theft is cause beyond control of bailee). Because theft was an act that prevented the Commission from testing the split sample and was beyond the control of the Commission, it was entitled under 58 Pa.Code § 163.318(e) to consider the results of the primary sample as *prima facie* evidence of Monaci's violation of the Commission's regulations.

Monaci also contends that the revocation of his race horse trainer's license must be set aside because the Commission improperly imputed Geraci's actions to him without any substantial evidence existing to show that he was associated with or involved in Geraci's theft of the split sample. He asserts that there was no testimony at either hearing to establish that he was in any way connected with the theft of the split sample; he was neither charged nor arrested for attempted bribery of Track employees or theft of the split sample; and Geraci never implicated him in the theft of the split sample. Absent such evidence, Monaci contends that the Commission cannot use the theft of the split sample to substantiate the permanent revocation of his race horse trainer's license or to impose the $1,000 fine.[18]

The Commission, however, contends that circumstantial evidence exists to establish Monaci's involvement in the theft of the split sample and his involvement can be inferred because Monaci was the only person who stood to benefit from the theft of the split sample, and Geraci stated that his "friend Monaci" was in trouble and needed help during his attempt to bribe Track employees. As a result, the Commission argues this constitutes circumstantial evidence for it to use in determining that Monaci participated in the theft of the split sample.

---

**17.** The Commission counters that irrespective of its control over the split sample, in light of its theft, it was entitled to consider the test results of the remaining primary sample as *prima facie* evidence of Monaci's violation of its regulations. It concedes that the remainder of the primary sample and not another split sample was tested at OSU, but asserts that because it was able to test the remaining portion of the primary sample, as a matter of right under 58 Pa.Code § 163.318(e) of the regulations, it could accept the two test results as *prima facie* evidence of Monaci's violation.

**18.** In the alternative, Monaci argues that if the Commission can use Geraci's theft of the split sample to substantiate the penalty imposed upon him, the Commission's order must be modified because the permanent revocation of his race horse trainer's license is an excessive penalty.

Circumstantial evidence has been defined as "evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred," W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 39, at 242 (5th ed.1984),[19] in contrast to direct evidence where there is direct eyewitness testimony of the ultimate fact to be determined. *DeFrancesco v. Western Pennsylvania Water Company*, 329 Pa.Super. 508, 478 A.2d 1295 (1984). When properly proved, circumstantial evidence is entitled to as much weight as direct evidence. *Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630 (1991). In relying upon circumstantial evidence to reasonably infer a factual conclusion, "the evidence must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion so as to outweigh . . . any other evidence and reasonable inferences therefrom which are inconsistent therewith." *Flagiello v. Crilly*, 409 Pa. 389, 391, 187 A.2d 289, 290 (1963). In this case, the question is whether there was sufficient circumstantial evidence for the Commission to find that Monaci participated in the theft of the split sample. The evidence which the Commission relied upon in finding that there was suffi-

cient circumstantial evidence to reasonably infer that Monaci participated in the theft of the split sample was an established relationship between Monaci and Geraci; Geraci mentioned Monaci's name to a Track employee during his bribery attempt; and Monaci was the only party who stood to benefit from the theft.

Examining the circumstantial evidence, all that it establishes is that Geraci's motivation for stealing the split sample was to help Monaci; it does not establish any involvement in the theft of the split sample by Monaci. There is neither circumstantial nor direct evidence demonstrating that Monaci instigated, encouraged or acquiesced in Geraci's theft of the split sample. The type of circumstantial evidence that would lead to the Commission's reasonable inference that Monaci was involved in the theft of the split sample would be actions on his part such as asking when the split sample would be shipped to OSU or attempting to bribe the Track employees himself. Absent that type of evidence, we cannot say that any reasonable inference could be drawn from the circumstantial evidence to demonstrate conduct on Monaci's part to establish that he participated in the theft of the split sample.[20] Be-

---

19. The inference from which the conclusion is derived "is simply a clear, logical, reasonable and natural conclusion which the trier of fact may embrace or reject based on the evidence in the case". *Bixler v. Hoverter*, 89 Pa.Cmwlth. 88, 491 A.2d 958, 959 (1985); *see also Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972), *cert. denied*, 409 U.S. 867, 93 S.Ct. 164, 34 L.Ed.2d 116 (1972) ("an inference is no more that a logical tool enabling the trier of fact to proceed from one fact to another"). The facts presented are the foundation of any inference and will determine whether that inference is reasonable. *Ellis v. City of Pittsburgh*, 703 A.2d 593 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, —— Pa. ——, —— A.2d —— (filed June 22, 1998). A party is not entitled to an inference of fact which amounts to nothing more than a guess or conjecture. *Flaherty v. Pennsylvania Railroad Co.*, 426 Pa. 83, 231 A.2d 179 (1967).

20. *See, e.g., Commonwealth v. Finley*, 477 Pa. 382, 383 A.2d 1259 (1978) (in conviction for third-degree murder, burglary and conspiracy, circumstantial evidence of defendant's presence at scene insufficient evidence to establish guilt for crimes charged); *Urbanic v. Rosenfeld*, 150 Pa.Cmwlth. 468, 616 A.2d 46 (1992), *aff'd without opinion*, 534 Pa. 266, 631 A.2d 596 (1993) (in

42 U.S.C. § 1983 civil rights claim, circumstantial evidence of neighbor's numerous telephone calls to police and community activities along plaintiff's "gut feeling" of being wronged insufficient to establish conspiracy existed between neighbor and local police); *Commonwealth v. Scott*, 409 Pa.Super. 313, 597 A.2d 1220 (1991) (in conviction for arson, circumstantial evidence of defendant's being at premises before fire and squirting lighter fluid on boyfriend insufficient evidence to support conviction); *Commonwealth v. Diehl*, 402 Pa.Super. 12, 585 A.2d 1112 (1991) (in conviction for conspiracy to commit theft and burglary of store, circumstantial evidence of defendant's conversation with alleged co-conspirators about impending burglary, driving to and waiting for co-conspirators at store sufficient to establish that party aided and abetted in commission of common plan and was guilty of conspiracy); *Farnese v. Southeastern Pennsylvania Transportation Authority*, 338 Pa.Super. 130, 487 A.2d 887 (1985) (in personal injury suit, circumstantial evidence on cause of jolt while bus driving through construction area insufficient to demonstrate that municipality was negligent and was liable for plaintiff's injuries); *Commonwealth v. Stores*, 317 Pa.Super. 109, 463 A.2d 1108 (1983) (in conviction for theft and conspiracy, circumstantial evidence of defendant entering store one-

cause it could not rely upon the circumstantial evidence to reasonably infer that Monaci participated in the theft of the split sample, the Commission erroneously used that evidence in finding that Monaci violated Section 213(f)(2) of the Act because his purported theft of the split sample was inconsistent with the best interest of horse racing.

Accordingly, that portion of the Commission's order finding Monaci in violation of 58 Pa.Code §§ 163.302(a)(1), 163.303(a), (b) and (c), 163.309 and 163.521(f) is affirmed, but that portion of the Commission's order finding that Monaci violated Section 213(f)(2) of the Act is reversed and the case remanded back to the Commission for imposition of a new penalty.

### ORDER

AND NOW, this 31st day of August, 1998, the order of the State Horse Racing Commission dated January 15, 1998, is affirmed in part, reversed in part and this case is remanded consistent with this opinion.

Jurisdiction relinquished.

half hour to full hour before store clerk noticed missing jewelry insufficient to sustain conviction

without evidence that other customers in store could not have stolen jewelry).