J.D.S., : 
                Petitioner : 
                             : **CASE SEALED**
          v. : No. 806 C.D. 2015
                             : Submitted: January 29, 2016
                             : 
Department of Human Services, : 
                Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                        FILED: April 26, 2016

        J.D.S. (Father) petitions for review of an adjudication of the Secretary of Human Services that refused to expunge two indicated reports naming him as a perpetrator of child abuse from the ChildLine Registry.[1]  In doing so, the Secretary reversed the decision of the Department's Bureau of Hearings and Appeals to sustain Father's appeals on the recommendation of the Administrative Law Judge (ALJ).  The ALJ concluded that Father's assistance of his young daughters, ages 5 and 10, with bathing and inspection of them for bruises did not constitute sexual exploitation.  On reconsideration, the Secretary reversed for the stated reason that the ALJ's findings showed that the Department is maintaining the indicated reports

---

[1] ChildLine is a unit of the Department of Human Services that operates a statewide toll free system for receiving and maintaining reports of suspected child abuse, along with making referrals for investigation.  55 Pa. Code §3490.4.

"in a manner which is consistent with the regulations." Secretary's Final Order, April 13, 2015. Because the facts as found do not support a conclusion of sexual exploitation, we reverse the Secretary.

Father and his former wife (Mother) have two daughters: M.S. (Older Daughter), who was born in 2002, and K.S. (Younger Daughter), who was born in 2007. During their bitter divorce, Father and Mother shared custody of their daughters. In the course of litigation between Father and Mother over custody, the County Office of Children and Youth Services (County) learned that when the children arrived at Father's house, he would remove their clothing to look for bruises. In addition, when the children showered, Father remained in the bathroom and helped them wash their hair. Sometimes Father helped Younger Daughter with wiping after toileting. In December 2012, the trial court judge issued an order directing Father to stop the above-described conduct. The order stated in relevant part:

> D. There shall be no bodily inspections of the children, except by medical professionals or child welfare professional[s] investigating abuse.
>
> E. The children shall only be assisted in the bathroom and shower by a female.

Reproduced Record at 51a (R.R. ___).

On June 18, 2013, the County received a report that in May 2013, Father had assisted Younger Daughter in the bathroom during a visit to the doctor's office. At that point, a joint investigation was initiated by the County and

2

the Pennsylvania State Police. Older Daughter reported to the investigator that Father had continued to be present in the bathroom when they showered.[2]

The police did not file criminal charges against Father. However, on August 15, 2013, the County filed two indicated reports of child sexual abuse or exploitation against Father, one for Older Daughter and one for Younger Daughter. R.R. 54a-58a. At Father's request, the Department reviewed the findings against him and determined that both indicated reports were accurate and being maintained in a manner consistent with the Child Protective Services Law[3] and its regulations. Father appealed, requesting expungement of the indicated reports. The ALJ conducted a hearing.

At hearing, the County stipulated that Father did not commit an act of sexual abuse but, rather, argued that he engaged in sexual exploitation of his daughters. For purposes of the Child Protective Services Law, sexual exploitation is defined as:

> (D) Exploitation which includes any of the following:
>
> (1) *Looking at the sexual or other intimate parts of a child for the purpose of arousing or gratifying sexual desire in either person.*
>
> (2) Engaging or encouraging a child to look at the sexual or other intimate parts of another person for the purpose of arousing or gratifying sexual desire in any person involved.

---

[2] The trial court conducted *in camera* interviews in October 2013, during which Older Daughter stated that Father had continued to help the girls shower until mid-March 2013. Younger Daughter stated that Father helped wash her hair in the shower and helped her in the doctor's office bathroom. The trial court did not hold Father in contempt of its December 2012 order.

[3] 23 Pa. C.S. §§6301-6386.

(3) Engaging or encouraging a child to participate in sexually explicit conversation either in person, by telephone, by computer or by a computer aided device.

55 Pa. Code §3490.4 (emphasis added).

Older Daughter testified that in 2013, after the trial court's order, Father was present in the bathroom "a few times" while she was showering.[4] R.R. 201a; Notes of Testimony, June 13, 2014, at 35 (N.T. ___). Father would help remove her clothing, wash her hair and dry her off with a towel. The children did not receive assistance with showering at Mother's house. Older Daughter testified that she told Father she did not want his help. Older Daughter also testified that Father did the same thing with Younger Daughter, who was five or six years old at the time. Older Daughter testified that Father was clothed, did not get into the shower and did not touch her or her sister inappropriately.[5] Father never helped Older Daughter with toileting.

Older Daughter also testified that Father continued to strip both children in the kitchen to look for bruises almost every time they visited. Older Daughter protested but Father replied that he wanted to make sure the children were safe and not being beaten at Mother's house. Older Daughter testified that she felt "violated" when Father saw her without her clothing. R.R. 203a; N.T. 41. Older Daughter did not tell Mother about these incidents; it was Younger Daughter that did so. Older Daughter testified she did not want to see Father anymore

---

[4] The children went to Father's house each Wednesday for two hours and every other weekend.

[5] Pennsylvania State Police Trooper Allison Goswick is a criminal investigator trained to do forensic interviews of children to determine if sexual abuse has occurred. Trooper Goswick testified that Older Daughter told her during an interview that no one had touched her private parts and she had never seen or touched male private parts. R.R. 222a; N.T. 118.

because she was afraid Father would take her away and she would never see Mother again.

Younger Daughter testified that Father was present in the bathroom when she and Older Daughter got into the bathtub while on a trip. She could not remember if Father helped her bathe or shower any other time. Younger Daughter testified that Father took her to the bathroom at a doctor's office and wiped her front and back after toileting. Younger Daughter testified that she did not ask for this help, and Mother did not help her in the bathroom. Younger Daughter testified that she did not tell Father she did not want his help. Younger Daughter confirmed that Father removed her clothing in the kitchen to look for bruises, which made her feel "weird inside." R.R. 210a; N.T. 69. She eventually told Mother about it, but could not recall when.

The County's investigator, Barbara Adams, testified. She spoke with Older Daughter, Younger Daughter and Father before making her decision to issue indicated reports of sexual exploitation by Father. Both children told Adams that they did not want or need Father's assistance in the bathroom and told him so, but he persisted. Father admitted to Adams that he had assisted Younger Daughter with toileting at the doctor's office. Adams asked Father to submit to a Sexual Offender's Assessment test, but he declined on the advice of counsel. Father did take a polygraph test administered by the State Police. Adams testified that because Father continued to have the children take their clothes off in his presence despite their objection and a court order, there must have been a sexual component to this behavior. Specifically, she testified:

> Q. Let me ask this question, Ms. Adams: What did you find in your information that was sexual in what he did?
>
> A. The children do not want it done.

5

Q. I understand that children don't want to eat rice, either--

THE COURT: Broccoli.

Q. Or broccoli, okay, but what did he do that arises to sexual exploitation? You indicated him. What did he do that arises to sexual exploitation?

A. I indicated him because I don't know -- like, he would not do a Sexual Offender's [Assessment test]. I don't know --

Q. Don't you have to have some sort of evidence that you are going to indicate someone that you believe this occurred?

A. Yes, I believe it occurred.

Q. What occurred? That's what I'm asking. What occurred that was sexual exploitation?

A. [Father] took his children's clothes off against their will.

R.R. 218a; N.T. 101-102.

Father presented the testimony of Pennsylvania State Police Trooper Douglas Snyder, a criminal investigator who investigated the report against Father. Based on Father's polygraph test results and lack of evidence of sexual abuse, Trooper Snyder decided not to file criminal charges. Trooper Snyder also testified that nothing in the investigation suggested that Father's conduct was tied to sexual gratification.

For his part, Father admitted that he assisted Younger Daughter in the doctor's office bathroom in spite of the court order. Father testified that no one else was available, and Younger Daughter had asked him to help her with wiping. Father acknowledged that he helped his daughters rinse their hair in the shower, which he had done since they were babies. Father testified that he did not get sexual gratification from seeing the children naked.

6

Father testified that after the court order, he did not enter the bathroom while the children were showering. He denied ever stripping the children naked to look for bruises. He testified that he checked their arms and legs for bruises, but they kept their shorts and shirt on. On June 5, 2013, Father learned that Older Daughter was planning to accompany Mother's boyfriend, without Mother or Younger Daughter, for a weekend trip to Ohio, and he objected. Shortly thereafter, the charges were made against him with the County.[6]

The ALJ found the testimony of Older Daughter, Younger Daughter and Barbara Adams credible and rejected the testimony of Father as not credible. The ALJ found that Father "did exactly what was described by the children," *i.e.*, he helped Younger Daughter wipe after toileting, viewed both children naked while checking for bruises and helped them wash their hair in the shower. ALJ Recommended Adjudication at 12. Nevertheless, the ALJ concluded that the County failed to show that these actions constituted sexual exploitation because

> there is not one scintilla of evidence to show that [Father] looked at the sexual parts of the subject children for the purpose of arousing the children or, much more importantly, was aroused or gratified in a sexual manner by what he saw.

ALJ Recommended Adjudication at 13. Noting that the allegations of sexual exploitation came during a bitter custody dispute, the ALJ concluded that a sexual motive could not reasonably be inferred from the evidence. Describing Father's behavior as "somewhere between reprehensible and disgraceful," the ALJ concluded, nevertheless, that it did not rise to the level of sexual exploitation. ALJ

---

[6] Both the County and Father presented testimony from additional witnesses. Because that testimony is not necessary to address the legal issue at hand, in the interest of brevity we do not summarize it.

7

Recommended Adjudication at 13. The ALJ recommended that the appeals be sustained and the indicated reports be expunged.

On December 1, 2014, the Department's Bureau of Hearings and Appeals adopted the ALJ's recommended adjudication in its entirety. Thereafter, the Secretary granted the County's application for reconsideration and set aside the Bureau's order. The Secretary reasoned as follows:

> Upon review, and based upon the detailed findings of fact within the adjudication, I find that the [County] has met its burden of proof by substantial evidence that the Department is maintaining indicated reports of child abuse against [Father] in a manner which is consistent with the regulations.

Secretary's Final Order, April 13, 2015. The Secretary provided no further explanation. Father then petitioned for this Court's review.[7]

On appeal, Father argues that the Secretary had no legal basis for setting aside the order of the Bureau of Hearings and Appeals. The facts as found by the ALJ and adopted by the Bureau and the Secretary do not support a

---

[7] Our review determines whether constitutional rights were violated, whether errors of law were committed or whether necessary findings of fact are supported by substantial evidence. *J.M. v. Department of Public Welfare*, 94 A.3d 1095, 1098 n.8 (Pa. Cmwlth. 2014). Section 6303(a) of the Child Protective Services Law defines "substantial evidence" as

> [e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion.

23 Pa. C.S. §6303(a). To meet this statutory burden of proof, the county must submit evidence of abuse that outweighs contrary evidence. *A.P. v. Department of Public Welfare*, 98 A.3d 736, 742-43 (Pa. Cmwlth. 2014). The Department is the factfinder in expungement appeals and responsible for credibility determinations. *F.V.C. v. Department of Public Welfare*, 987 A.2d 223, 228 (Pa. Cmwlth. 2010). Nevertheless, whether evidence meets a prescribed standard of proof is "always a question of law and therefore reviewable by the appellate court." *Stafford v. Reed*, 70 A.2d 345, 346 (Pa. 1950).

8

conclusion that Father engaged in sexual exploitation of his two daughters.[8]  The County rejoins that Father's conduct of viewing his daughters naked while searching for bruises, helping them shower and helping Younger Daughter with toileting meets the statutory definition of sexual exploitation.

In an expungement case, the county agency bears the burden of proving that the alleged perpetrator's actions constitute child abuse within the meaning of the statute.  *C.K. v. Department of Public Welfare*, 869 A.2d 48, 52 n.7 (Pa. Cmwlth. 2005).  The narrow issue in this case is whether Father committed sexual exploitation, which is defined as follows:

> Looking at the sexual or other intimate parts of a child for the purpose of arousing or gratifying sexual desire in either person.

55 Pa. Code §3490.4 (definition of "Sexual abuse or exploitation" (i)(D)(1)).

Conceding, as it must, that there is no direct evidence of sexual exploitation, the County argues that a sexual motive can be inferred from the evidence.  The County contends that there "is simply no other explanation [besides sexual arousal or gratification] for [Father's] behavior given [daughters'] ages and ability to bathe and toilet themselves."  County Brief at 13.  At the hearing, Counsel for the County explained:

> So it would be our position that the circumstantial evidence here in terms of the arousal or sexual component is basically for what other reason would this gentleman be doing this?  We can't think of any other reason.  He must be getting some type of gratification for seeing his kids naked, and if he's continued

---

[8] Although Father testified that he did not see his daughters without their clothing after the court order except for Younger Daughter's trip to the bathroom at the doctor's office, Father recognizes that his testimony was not accepted.  Father argues that assuming the events occurred, they do not amount to sexual exploitation.

9

doing this even though the judge says don't do it, and the caseworker says don't do this anymore, and you continue doing it, what other reason is there other than you have some sexual addiction that you want to see your kids naked? It's a circumstantial evidence thing.

R.R. 219a-220a; N.T. 108-109.

Circumstantial evidence is evidence of a fact from which "the existence of the fact to be determined may reasonably be inferred." *Monaci v. State Horse Racing Commission*, 717 A.2d 612, 618 (Pa. Cmwlth. 1998). In order to support a reasonable inference, "the [circumstantial] evidence must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion so as to outweigh … any other evidence and reasonable inferences therefrom which are inconsistent therewith." *Id.* (quoting *Flagiello v. Crilly*, 187 A.2d 289, 290 (Pa. 1963)). "A party is not entitled to an inference of fact which amounts to nothing more than a guess or conjecture." *Monaci*, 717 A.2d at 618 n.19.

In support of its position that a sexual motive can be inferred from the circumstances, the County relies on two cases. The first, *G.S. v. Department of Public Welfare*, 521 A.2d 87 (Pa. Cmwlth. 1987), concerned sexual abuse. This Court concluded that the father committed sexual abuse of his eight-year-old daughter by placing his hands under his daughter's shorts on her bare buttocks while laying in bed together reading a story and by rubbing her bottom "hard" during baths. *Id.* at 90. In *C.G. v. Department of Public Welfare*, (Pa. Cmwlth., No. 418 C.D. 2012, filed April 11, 2013), a father bathed his six-year-old daughter

despite her protestations that she could wash herself.[9] The daughter testified that her father touched her chest and pelvic areas in the shower but not for the purpose of bathing her. This Court held that it was reasonable to infer that the father's touching "was for purposes other than bathing, and that this purpose was sexual gratification." *Id.* slip op. at 12.[10]

These cases do *not* stand for the universal proposition that where a father bathes his daughter, sexual arousal or gratification must be inferred. Both involved inappropriate touching in the bath, a critical factor absent in the instant case. It is undisputed that Father never inappropriately touched the children. He saw the children without their clothing to look for bruises; to help them in the shower, something he had done since they were babies; and to help Younger Daughter with toileting.[11] The burden was on the County to prove that sexual exploitation occurred. It was not Father's burden to prove the absence of a sexual motive.

---

[9] Section 414 of this Court's Internal Operating Procedures authorizes the citation of unreported panel decisions issued after January 15, 2008, for their persuasive value, but not as binding precedent. 210 Pa. Code §69.414.

[10] This Court ultimately vacated the Bureau's order denying expunction and remanded to assess the evidence under the clear and convincing standard.

[11] The County contends that the ALJ rejected Father's explanations that he was helping his daughters bathe and toilet and was inspecting them for bruises. County Brief at 13. This is a misinterpretation of the ALJ's credibility finding regarding Father. Although the ALJ found Father not credible, the ALJ's finding was focused on whether the incidents occurred after the court order, something Father denied except for his admission that he helped Younger Daughter in the bathroom at the doctor's office. Older Daughter and Younger Daughter testified that Father was checking them for bruises, helped wash their hair in the shower and helped Younger Daughter with toileting. Further, even if the ALJ were to reject Father's proffered reasons for seeing his daughters unclothed, it does not mean that the motivation must necessarily be a sexual one.

The ALJ's legal analysis, adopted by the Bureau, was correct. There is no evidence at all that Father had a sexual motivation for his actions. Inferring such a motivation is impermissible because it would be no more than "a guess or conjecture." *Monaci*, 717 A.2d at 618 n.19. The County does not approve of Father's actions and cannot fathom a reason for them other than sexual exploitation, but a motive of sexual gratification cannot be presumed.[12] Accordingly, the Secretary erred in concluding that the indicated reports were being maintained in accordance with the law.

For the above-stated reasons, we reverse the Secretary's adjudication and direct the expunction of Father's two indicated reports from the ChildLine Registry.

_____
MARY HANNAH LEAVITT, President Judge

---

[12] *Cf. K.J. v. Department of Public Welfare*, 767 A.2d 609, 613 (Pa. Cmwlth. 2001) (babysitter asking female child to kiss a "boo-boo" located between his legs and pushing the child's head between his legs constituted sexual exploitation); and *G.V. v. Department of Public Welfare*, 52 A.3d 434, 439 (Pa. Cmwlth. 2012), *rev'd on other grounds*, 91 A.3d 667 (Pa. 2014) (male relative fondling child's buttocks and breasts and attempting to touch her genitals supported inference of arousing sexual gratification).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J.D.S.,                              :
               Petitioner                  :
                                  :   **CASE SEALED**
            v.                           :   No. 806 C.D. 2015
                                  :
Department of Human Services,        :
                Respondent                 :

# **O R D E R**

AND NOW, this 26th day of April, 2016, the order of the Secretary of Human Services, dated April 13, 2015, in the above-captioned matter is hereby REVERSED, and J.D.S.'s two indicated reports are ordered to be removed from the ChildLine Registry.

_____
MARY HANNAH LEAVITT, President Judge