Flaherty, Appellant, *v.* Pennsylvania Railroad Company.

Argued March 16, 1967. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*P. J. McArdle,* with him *James R. Fitzgerald,* for appellant.

*Aloysius F. Mahler,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 30, 1967:
This is a trespass action for damages arising from an accident in which plaintiff was injured while un-

loading a box car on defendant's railroad tracks. Plaintiff recovered a verdict of $30,000, the lower Court entered judgment n.o.v., and from that judgment plaintiff took this appeal. On February 20, 1963, plaintiff John L. Flaherty had backed his truck against the open door of a railroad box car in order to unload about 150 cartons of paper napkins. These cartons were stacked in layers seven feet high from the floor of the box car. At the time of the accident plaintiff was standing on an improvised step in the car, about three cartons high, and was reaching for a package at the top of the last stack. A number of boxes toppled on him and he fell to the floor and was knocked unconscious when his head hit the steel deck of the car. He testified that he had no recollection of the cause of the accident, because of the suddenness of this mishap and his resulting injury.

One of plaintiff's witnesses testified that a freight car, which had been parked twenty feet away from the box car in which plaintiff was working, was no longer present on the track after the accident. Furthermore, the witness said that he saw an engine on the same track where the box car was, and it was pulling two or three freight cars out of the railroad yard while he was on the way to aid the injured plaintiff. Finally, evidence was offered to show the position of the plaintiff in the railroad car after the accident had occurred. Plaintiff argues that this evidence indicated that one of defendant's engines must have rammed another railroad car into the box car in which plaintiff was working, thereby knocking him to the floor and causing his injuries. Contrary to plaintiff's contention, there was no evidence from which a jury could reasonably infer that there was a negligent collision between a freight car and the box car.

In *Wood v. Conneaut Lake Park, Inc.*, 417 Pa. 58, 209 A. 2d 268, the Court aptly said (pages 60, 61-62) :

". . . It is, of course, hornbook law that the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of *every reasonable inference of fact*[*] arising therefrom, but he is not entitled to inferences which amount merely to a guess or conjecture: Bohner v. Eastern Express, Inc., 405 Pa. 463, 466, 469, 175 A. 2d 864.

. . .

"It is well settled . . . that plaintiff must prove by a fair preponderance of the evidence, (a) that defendant was negligent, and (b) that its negligence was the proximate cause of the accident: Markle v. Robert Hall Clothes, 411 Pa. 282, 191 A. 2d 374; Zilka v. Sanctis Const. Co., 409 Pa. 396, 186 A. 2d 897; Bohner v. Eastern Express, Inc., 405 Pa., supra. Moreover, a verdict will not be sustained which is based on conjecture or surmise or guess: Steiner v. Pittsburgh Railways Co., 415 Pa. 549, 204 A. 2d 254;[2] Robbins v. Kaufman, 415 Pa. 192, 202 A. 2d 826." Accord: *Watkins v. Sharon Aerie No. 327 Fraternal Order of Eagles*, 423 Pa. 396, 223 A. 2d 742.

Plaintiff principally relies upon *Amon v. Shemaka,* 419 Pa. 314, 214 A. 2d 238; *Steiner v. Pittsburgh Railways Company,* 415 Pa. 549, 204 A. 2d 254; and *Smith v. Bell Telephone Co.,* 397 Pa. 134, 153 A. 2d 477. It will suffice to say that plaintiff's evidence has not brought his claim within the rule laid down in these cases.

Judgment notwithstanding the verdict affirmed.

Mr. Justice COHEN and Mr. Justice ROBERTS dissent.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

John L. Flaherty, a truck driver, drove his truck to the Federal Street Depot of the Pennsylvania Railroad,

———

[*] Emphasis in the original.

N.S., Pittsburgh, to obtain a shipment of cartons. He backed his truck against a box car in such a fashion that the rear end of his truck covered the opening into the box car. He entered the box car and proceeded to take down the packages he was to load into his truck when he was jerked loose from his position, tumbled to the floor, losing awareness. When he regained consciousness he found himself 12 to 15 feet east of the position he had been in just before the accident.

What caused this?

Twenty feet east of the car in which Flaherty was performing his unloading work there reposed another box car, this one empty. Shortly after the accident, a railroad worker, Crowley by name, saw a shifting engine pulling cars in an easterly direction away from the Flaherty box car. The empty box car was no longer in the position it had been prior to the accident. In addition, the rear of Flaherty's truck was some 5 to 6 feet east of the opening into the box car.

With these uncontradicted facts before us, we do not need Sherlock Holmes to tell us what happened. It is as obvious as a railroad spike that the shifting engine seen by Crowley drove up to the empty box car to engage it and tow it away. Engaging railroad cars is no tiddly-winks, pat-on-the-wrist operation. The locomotive rams into the stationary car, the violent impact forces open the coupling device at the rear of the car and the front of the engine; the locomotive and car join and roll away, not to be separated again until the needs of the railroad divorce them. In this slamming process, it is inevitable that the stationary car will be jolted over the tracks at least a short distance. In this case it is not difficult to assume that it was jolted and perhaps even pushed at least 20 feet so that it hit the Flaherty box car and moved it some 5 or 6 feet. This would account for the fact that, after the accident, the open door of the box car was 5 to 6 feet west of the

rear end of the Flaherty truck although prior to the accident, as we have already noted, the truck was flush with the door of the box car. This explanation also accounts for the fact that when Flaherty regained consciousness he was 12 to 15 feet east of the position he had occupied when he was pulling down the packages inside the box car.

Flaherty sued the railroad company and the jury concluded that, for Flaherty to have been thrown some 12 to 15 feet, some extraordinary force must have been exerted against the box car. The jury found also that the door to the Flaherty box car could not have been 5 to 6 feet west of the truck except that the Flaherty box car had been pushed by the shifting locomotive. The jury found for the plaintiff and returned a verdict in his favor for $30,000 since Flaherty had suffered a shattered clavicle, torn shoulder capsule, etc.

The trial court reversed the verdict of the jury and entered judgment in favor of the defendant. It said that it was just "as likely that plaintiff fell while reaching for a carton as that he was knocked to the floor by another car striking his." But this explanation does not account for the fact that the box car floor was strewn with boxes, a result hardly possible if the plaintiff had merely fallen. Nor does it account for the fact that Flaherty's truck was now 5 to 6 feet further east of the box car door than it was before the accident. Moreover, the court overlooks the fundamental proposition that the jury found for the plaintiff and that the court has no right to speculate between two possibilities. The evidence is to be read in the light favoring the verdict-winner. As between two similar likelihoods, the conclusion reached by the jury must prevail. This is fundamental, I repeat; indeed, it is elementary, as Sherlock Holmes would say to Watson.

Then, the trial court said that it was "just as likely that someone moved the truck as that the box car moved." The court has no right to indulge in this guesswork. Even assuming that it was as likely that the truck was moved by someone else as it was that the box car moved away from it, the court, I repeat, in considering motion for judgment n.o.v. is required to read the record in the light most favorable to the verdict winner. Again, as Sherlock Holmes would say, this is elementary, dear Watson. Indeed, this Court, in the case of *Smith v. Bell Telephone Co.*, 397 Pa. 134, made this proposition official, namely, "It is beyond the power of the court to say whether two or more reasonable inferences are 'equal'."

The trial court also said that because the plaintiff's witnesses could not approximate the time of the accident "the jury could not infer that plaintiff's mishap was proximately related to the arrival of the switching engine and the removal of the preceding freight car." Why not? This was all within the scope of the ascertained facts.

Then the trial court went on to expatiate: "The accident may well have occurred at an earlier time." Of course, it could have. It is even possible that Flaherty sustained his shattered clavicle playing basketball, that someone carried him to the box car, that someone else chaotically scattered the cartons on the floor of the box car, that another phantom moved Flaherty's truck, that a further specter directed the shifting engine to clang away shortly after the accident—all to downgrade the Pennsylvania Railroad Company and mulct it out of $30,000. All this is possible. When one starts to look into a crystal bowl, instead of the law books, for justification for judgment n.o.v., nothing is impossible. I suggest, however, that it makes for a more orderly system of law, to say nothing of justice, if we are guided by guidelines laid down in the volumes

of jurisprudence, instead of guesses woven out of abstract theorizing.

I again call attention to *Smith v. Bell Telephone Co.*, 397 Pa. 134, which is the law of the Commonwealth. *"The right of a litigant to have the jury pass upon the facts is not to be foreclosed just because the judge believes that a reasonable man might properly find either way.* A substantial part of the right to trial by jury is taken away when judges withdraw close cases from the jury." (Emphasis supplied)

Then the trial court opined that the plaintiff's explanation of the accident does not "eliminate the other probable cause, his loss of control of the box, which the evidence fairly suggests." Again I come back to the *Smith* case, as Sherlock Holmes would point out to Watson. Justice McBRIDE said in that case, in words that anyone, who can run or ride a railroad train, can read, that in order for a verdict to be sustained it does not need to be "the *only* one which logically can be reached. It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. . . True enough the trial judge has to do something like this in deciding a motion for new trial based on the weight of the evidence but *no such rule governs him in deciding whether a case is submissible to the jury."* (Emphasis supplied.)

When a judge passes on a motion for judgment n.o.v., he is in the same posture as when he considers a motion for a nonsuit or a directed verdict. At that juncture he must give weight to all the evidence presented in behalf of the plaintiff and if that evidence makes out a prima facie case, he has no right to take it away from the jury. Watson knew that.

The case of *Smith v. Bell Telephone Company* is one of the wisest, most equitable and fairest decisions

rendered by this Court during the last fifty years. It provides for a block system of safety, it flashes a red light of danger, it is an automatic switch to prevent collisions, it is an ambulance to care for the wounded and the injured. In this case, it has been side-tracked to allow the wreckage and the debris of an unjust decision to travel on the main track.