**A.B., A minor, by her parents Jason and Cindy BENNETT**

v.

**SLIPPERY ROCK AREA SCHOOL DISTRICT, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 28, 2006.

Decided Aug. 31, 2006.

Michael D. Hnath, Butler, for appellant.

Victor E. Vouga, Cranberry Township, for appellees.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

The Slippery Rock Area School District (School District) appeals an order of the Court of Common Pleas of Butler County (trial court) reversing the decision of the School Board's (Board) determination to expel A.B. from Slippery Rock Area Middle School (Slippery Rock).

A.B. was a sixth-grade student at Slippery Rock. From 8:42 a.m. to 8:44 a.m. on January 12, 2006, A.B. signed out of class to go the bathroom. While in the bathroom, A.B. found a bomb threat note on top of a toilet's flushing mechanism which read, "A bomb will go off in the school tomorrow."[1] The note was written on a tiny piece of paper torn off the corner of a sheet of notebook paper. As she was exiting the bathroom, A.B. saw another student and told her about the note she had just discovered. Both students notified their teacher who then notified the school's principal, Joseph Raykie (Principal Rayk-

---

1. The record indicates that the janitor had cleaned the bathroom the night before, and he did not see any note at that time.

ie). Principal Raykie secured the note and called the Pennsylvania State Police to investigate.

During the investigation, two police officers, David Bayer (Trooper Bayer) and Chris Birckbichler (Trooper Birckbichler), interviewed A.B. without anyone else present.[2] After extensive verbal questioning from the officers, A.B. produced a written confession in which she admitted to writing "a bomb note" approximately two weeks prior to the incident and giving it to a friend as a joke. A.B. denied that she put this note in the bathroom, but indicated that she believed she had put it in somebody's backpack or desk and that somebody else must have put it in the bathroom.[3] A.B. wrote that she didn't recognize the note's handwriting as her own when she discovered it in the bathroom and brought it to her teacher. A.B. was immediately suspended from school for 10 days for violating the School District's Policy 218.2, entitled "Terroristic Threats/Acts."[4]

Before the Board, Principal Raykie testified that A.B. was a good student with a good attendance record and no disciplinary record. Principal Raykie testified that he provided student handwriting samples to the state police, but he had no contact with A.B. during the investigation. Principal Raykie did not testify to having any knowledge of the writing and placement of the note.

Trooper Birckbichler testified that the bathroom where the note was found had been cleaned the night before, and the janitor did not report seeing the note that evening. A.B. was in the bathroom the next morning from 8:42 until 8:44, right before the note was found and given to the teacher. He testified that he believed A.B. wrote the note because of her reactions to his questions and because of the similarities between the handwriting on the note and A.B.'s handwriting on the bathroom sign-out sheet and her handwriting sample that she was asked to provide. He also testified that although she initially denied any involvement, she then verbally and in writing admitted that she wrote the bomb threat note as a joke. Although Trooper Birckbichler's testimony indicated that he did not believe A.B.'s written statement that she did not place the bomb threat in the bathroom, he stated that he did not know who had placed the note on the toilet and he had no direct evidence that A.B. had done so. A.B. did not testify or present any evidence regarding the note, although her father testified to his belief that A.B.'s confession that she wrote the note was coerced. The Board did not find the testimony of A.B.'s father credible.

2. A.B.'s father was also a police officer, and he agreed to let Birckbichler and Bayer question A.B. without anyone else present. A.B.'s father agreed because he was told by Birckbichler that it would be a mild non-confrontational interview rather than a criminal investigation.

3. A.B.'s written statement made after the verbal interview reads: "I wrote a bom (sic) note that says a bom (sic) will go off tomorrow about two weeks ago. I gave it to a friend just as a joke though. Someone put it in the bathroom but it wasn't me. When I went to the bathroom I saw a note on the toilet that said that but I didn't know it was mine so I told the teacher I didn't know it was mine cause I didn't recognize it." (Reproduced Record at 122a).

4. This policy defines a terroristic threat as "a threat to commit violence communicated with the intent to terrorize another, to cause evacuation of a building, or to cause serious public inconvenience, in reckless disregard of the risk of causing such terror or inconvenience." (Reproduced Record at 119a–121a). The School District policy's definition is identical to the Crime Code's definition of that offense. See 18 Pa.C.S. § 2706.

The Board found Birckbichler's testimony more credible than that of A.B. and determined that the School District had shown by a preponderance of the evidence that A.B. wrote the note and placed it in the bathroom in violation of School District Policy 218.2. The School District expelled A.B. for the remainder of the 2005–2006 school year and left open the possibility that she could return for the 2006–2007 school year.

■■■■ A.B. appealed her expulsion to the trial court, arguing that the evidence presented to the Board did not prove it more likely than not that she both wrote the note and placed it in the bathroom. The trial court agreed, finding that even under the preponderance of the evidence standard,[5] the record did not contain substantial evidence to support the Board's

determination.[6] The trial court reasoned that while it established that she wrote the bomb threat note, it failed to establish that A.B. intentionally communicated a threat to commit violence because the record was devoid of any evidence that A.B. placed the note in the bathroom. Because communication with this intent was a critical element of violating School District Policy 218.2, the trial court concluded that the School District had no proper basis to expel A.B. and ordered the School District to reinstate A.B. immediately to her status as a sixth-grade student at Slippery Rock. The School District then filed this appeal.[7]

■■■■ The School District contends that it met the burden of establishing by a "preponderance of the evidence" that A.B. placed the note in the bathroom based on the circumstantial evidence[8] that she

5. The level of proof required to establish a case before the Board is the same degree of proof as used in most civil proceedings, i.e., a preponderance of the evidence. *Lansberry v. Pennsylvania Public Utility Commission,* 134 Pa.Cmwlth. 218, 578 A.2d 600 (1990). A preponderance of the evidence is "such proof as leads the fact-finder ... to find that the existence of a contested fact is more probable than its nonexistence." *Sigafoos v. Pennsylvania Board of Probation and Parole,* 94 Pa. Cmwlth. 454, 503 A.2d 1076, 1079 (1986). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept to support a conclusion of law." *Miller v. Pennsylvania Board of Probation and Parole,* 105 Pa.Cmwlth. 24, 522 A.2d 720, 721 (1987). In this case, if the School District established that it made out its claim by a preponderance of the evidence, then, necessarily, substantial evidence exists to support its finding that A.B. wrote and placed the note in the bathroom. The question is whether the School District established the "communicated" part of the School District Policy 218.2's definition of terroristic threat.

6. In particular, the Board relied upon the bomb threat note, the bathroom sign-out sheet, A.B.'s separate handwriting sample and A.B.'s written statement to the police.

7. Where a complete record is made before the local agency and the lower court takes no additional evidence, "[its] scope of review is limited to whether the local agency's adjudication violated provisions of the local agency law, or made findings or fact necessary to support its adjudication which were not supported by substantial evidence." *Monaghan v. Board of School Directors,* 152 Pa.Cmwlth. 348, 618 A.2d 1239, 1241 (1992). *See also* 2 Pa C.S. § 754(b).

8. Circumstantial evidence has been defined as "evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred," W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 39, at 242 (5th ed.1984) in contrast to direct evidence where there is direct eyewitness testimony of the ultimate fact to be determined. *Monaci v. State Horse Racing Commission,* 717 A.2d 612 (Pa.Cmwlth.1998). The inference from which the conclusion is derived "is simply a clear, logical, reasonable and natural conclusion which the trier of fact may embrace or reject based on the evidence in the case." *Bixler v. Hoverter,* 89 Pa.Cmwlth. 88, 491 A.2d 958, 959 (1985); *see also Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727 (1972) ("an inference is no more that a logical tool en-

wrote the note, found that note in the bathroom, gave the note to a teacher, initially denied that she wrote the note and that she was the one responsible for placing the note. A.B., however, argues that without any evidence proving that she put the note in the bathroom or conspired to do so, there is insufficient evidence to find that she communicated the threat with the intent to terrorize. A.B. asserts that, at most, she admitted to writing a bomb threat note two weeks before the incident, giving it to a friend as a joke, and that she did not recognize the note in the bathroom as her own.

Contrary to A.B.'s argument, there is no need for direct evidence to establish that she placed the note in the bathroom. If there were present sufficient facts from which the Board could draw a reasonable inference that she was the one who placed the note, that circumstantial evidence was sufficient to establish that she communicated the threat. For example, in *Commonwealth v. Robertson*, 874 A.2d 1200, 1206 (Pa.Super.2005), the Superior Court upheld a 60–year sentence where the identity of a perpetrator was established by circumstantial evidence presented stating:

> Initially, we must emphasize that the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. *Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super.2003). Furthermore, even if the Commonwealth presented only circumstantial evidence and offered no positive identification of the assailant, we may not weigh the evidence and substitute our judgment for the fact-finder as long as the

evidence was sufficient to prove Appellant's guilt. *Id.*

Although the bulk of the evidence connecting Appellant to the crime was circumstantial, and although the testimonial evidence involves some contradiction, we conclude that the evidence was sufficient to link Appellant to the crime. The evidence, viewed in the Commonwealth's favor, reveals that a jacket found in Appellant's residence with the victim's blood was worn on the night of the robbery. Appellant was placed near the scene of the crime at the approximate time of the attack, leaving Allen's residence for a period of time and returned with a sum of money for which he had no explanation. Appellant also told Allen not to worry about where the money came from and not to talk about it with anyone else. The whole of the evidence unquestionably links Appellant to the commission of the crime.

If circumstantial evidence can support a guilty verdict where the standard is "beyond a reasonable doubt," then circumstantial evidence here constitutes substantial evidence upon which a finding could be made that A.B. placed the note in the bathroom. From A.B.'s admissions that she wrote the note, found the note in the bathroom, gave the note to a teacher, after she initially denied that she wrote the note, all of which unquestionably link her to writing and discovery of the note, the Board could logically conclude based on that circumstantial evidence that A.B. was the one who left the note in the bathroom.

abling the trier of fact to proceed from one fact to another.") The facts presented are the foundation of any inference and will determine whether that inference is reasonable. *Ellis v. City of Pittsburgh*, 703 A.2d 593 (Pa. Cmwlth.1997). A party is not entitled to an inference of fact which amounts to nothing more than a guess or conjecture. *Flaherty v. Pennsylvania Railroad Co.*, 426 Pa. 83, 231 A.2d 179 (1967). When properly proved, circumstantial evidence is entitled to as much weight as direct evidence. *Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630 (1991).

Accordingly, because when properly proved, circumstantial evidence is entitled to as much weight as direct evidence, *Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630 (1991), and there was substantial evidence upon which the Board could find that A.B. wrote the note and left the note in the bathroom in violation of School District Policy 218, the order of the trial court is reversed and A.B.'s suspension is reinstated.

## ORDER

AND NOW, this 31st day of August, 2006, the order of the Court of Common Pleas of Butler County, No. M.S.D. 06–40031, is reversed and A.B.'s suspension is reinstated.

## DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority, reversing the Court of Common Pleas of Butler County, holds that the Slippery Rock Area School District (School District) proved by a preponderance of the circumstantial evidence that A.B., a sixth-grade student at Slippery Rock Area Middle School (Middle School), violated the school's terroristic threats policy by placing a bomb threat note in the girls' bathroom; thus, the School Board had good cause to expel A.B. (Majority op. at 677.) For the following reasons, I disagree.

A.B. is a very good student with no history of attendance problems or disciplinary problems.[1] (R.R. at 19a.) On Thursday, January 12, 2006, A.B. signed out of class at 8:42 a.m. to go to the girls' bathroom. While in the bathroom, A.B.

found a scrap of paper on top of the toilet's flushing mechanism, which read, "A bomb will go off in the school tomow [sic]." (R.R. at 115a.) As she left the bathroom, A.B. met another student and told her about the note. The two students informed a teacher, who notified the principal, Joseph Raykie (Principal Raykie). Principal Raykie went into the bathroom, took the note to prevent it from falling into the toilet and called the Pennsylvania State Police. (R.R. at 33a.)

Two state troopers came to investigate the matter. Principal Raykie informed the troopers that a student had come into the principal's office that morning to report overhearing a conversation on the bus about a bomb threat. (R.R. at 43a.) The troopers interviewed several other students and determined that two girls on the bus had been talking about bomb threats at the high school. (R.R. at 44a.)

When the troopers interviewed A.B., outside the presence of anyone else, the troopers initially asked A.B. "if she had anything to do with *this*." (R.R. at 46a) (emphasis added). A.B. "denied any knowledge of *it*." (R.R. at 47a) (emphasis added). The troopers then showed the note to A.B. and pointed out that the "A" in the handwriting of the note was similar to the "A" in a sample of A.B.'s handwriting that the troopers had obtained. (R.R. at 47a–48a, 71a.) A.B. then recognized the note as her own; she said that she had written the note two weeks earlier as a joke and gave it to a friend, but A.B. did not know who placed the note in the bathroom.[2] (R.R. at 70a.)

---

**1.** As shown in Part I below, the School Board's findings of fact in this case are woefully inadequate. Like the majority, which set forth its statement of "facts" based on selected portions of the record, I also present a

statement of "facts" based on selected portions of the record.

**2.** One of the state troopers testified that A.B. identified a couple of her friends who might have had the note, but, when questioned,

During their interrogation of A.B., the troopers admittedly lied to her by telling her that they knew she did it and that, if she would confess, "things will go a whole lot easier." (R.R. at 60a–61a.) After two hours of questioning, (R.R. at 59a), A.B. produced the following written statement.

> I wrote a bom [sic] note that says a bom [sic] will go off tomorrow about two weeks ago. I gave it to a friend just as a joke though. Someone put it in the bathroom but it wasn't me.[3] When I went to the bathroom I saw a note on the toilet that said that but I didn't know it was mine. So I told the teacher. I didn't know it was mine cause I didn't recognize it.

(R.R. at 122a.) Principal Raykie immediately suspended A.B. from school for ten days for violating School District Policy 218.2, which prohibits any student from communicating a threat to commit violence with the intent to terrorize another, to cause the evacuation of a building or to cause serious public inconvenience. (R.R. at 119a.)

One week later, on Thursday, January 19, 2006, another bomb threat note was found in the girls' bathroom, etched into a feminine napkin container. Like the previous note, this note indicated that a bomb would go off the next day. State troopers compared the handwriting to A.B.'s handwriting and concluded that the two were *not* comparable. (R.R. at 38a–40a.)

## I. Inadequate Findings of Fact

The School Board is a local agency, and its decision to expel A.B. is an adjudication. *Big Spring School District Board of Directors v. Hoffman by Hershey,* 88 Pa. Cmwlth. 462, 489 A.2d 998 (1985). School board adjudications must include all of the findings necessary to resolve the issues raised by the evidence, and where essential findings are not made, the case must be remanded so that these findings may be supplied. *Kudasik v. Board of Directors, Port Allegany School District,* 45 Pa. Cmwlth. 254, 405 A.2d 1320 (1979).

Based on the evidence presented at A.B.'s expulsion hearing, the School Board made only the following findings of fact.

1. The above-named student is a 6th grade student enrolled in the [School District].

2. At the time of the hearing on January 23, 2006, sufficient credible evidence was presented by the Administration to establish by a preponderance of the evidence that the above-named student en-

---

those students denied any knowledge of the note. (R.R. at 70a.) I point out that the state trooper's testimony about the friends' out-of-court statements is hearsay. Thus, there is no competent evidence to support a finding that A.B.'s friends had no knowledge of the note. *See Goodman v. Commonwealth of Pennsylvania,* 98 Pa.Cmwlth. 371, 511 A.2d 274 (1986) (stating that although local agencies are not bound by the technical rules of evidence, findings based solely on hearsay cannot stand).

3. The majority states, "The record indicates that the janitor had cleaned the bathroom the night before, and he did not see any note at that time." (Majority op. at 675 n. 1.) Later, the majority repeats this "fact," stating, "Trooper Birckbichler testified that the bath-

room where the note was found had been cleaned the night before, and the janitor did not report seeing the note that evening." (Majority op. at 676.)

However, the trooper actually testified that Principal Raykie told him that a janitor cleaned the bathroom the previous evening and that the janitor did not find a note. (R.R. at 75a–76a.) Such testimony, which involves both Principal Raykie's statements to the state trooper and the janitor's statements to Principal Raykie, is double hearsay. Thus, it is not competent evidence to support a finding that the note was placed in the bathroom on the morning of January 12, 2006. *See Goodman.* I question the majority's use of such evidence in its statement of the "facts."

gaged in the conduct set forth in Exhibit "A",[4] which is incorporated herein by reference.

3. The Board specifically finds a preponderance of the evidence that *the student wrote the note (Exhibit "D") and placed the same in the bathroom.*

4. The testimony presented *on behalf of* the above-named student was not sufficiently credible.

5. The *aforementioned conduct* is in violation of the Student Code of Conduct/Student Handbook, District Policy No. 218.2 (Exhibit "H").

6. The above-named student's conduct has disrupted the educational program of the [School District] as follows: Staff and students needed to be screened by a wand on January 13, 2006, and the Middle School had to be swept by the bomb squad on the evening of January 12, 2006.

7. The above-named student knew or should have known that her conduct was in violation of the Student Code of Conduct/Student Handbook and the aforementioned District policy(ies).

8. The above-named student knew or should have known that she would be subject to disciplinary action, including possible expulsion if the above-named student engaged in conduct that was in violation of the Student Code of Conduct/Student Handbook and/or District policy(ies).

(R.R. at 124a–25a) (emphasis added). I make the following observations about the deficiencies in these findings of fact and the majority's reading of them.

First, although there is a specific finding that A.B. wrote the note and placed it in the bathroom, (Findings of Fact, No. 3), there is no finding that A.B., or anyone else, found the note and reported it to a teacher. If the note was never found, there was never a communication of the threat to anyone and no violation of the school policy.

Second, there is only one specific credibility determination, i.e., that the testimony presented *on behalf of* A.B. is not credible. (Findings of Fact, No. 4.) The only witness testifying on behalf of A.B. was her father, who offered *no* testimony about the note. This means that the School Board made no finding rejecting any part of A.B.'s written statement, including those parts where A.B. states that she gave the note to a friend as a joke and where A.B. denies that she placed the note in the girls' bathroom.

Third, the majority states that the School Board found the state trooper's testimony "more credible than that of A.B." (Majority op. at 677.) However, this is *impossible* because A.B. did not testify. Moreover, as the above findings indicate, the School Board made no finding about the credibility of the state trooper's testimony.

Fourth, the majority states that the School Board logically concluded that it was more likely than not that A.B. placed the note in the bathroom based on the following circumstantial evidence: (1) A.B. initially denied that she wrote the note; (2) A.B. then admitted that she wrote the note; (3) A.B. found the note; and (4) A.B. reported the note to a teacher. (Majority op. at 678.) However, there are no findings of fact that A.B. initially denied that she wrote the note,[5] that A.B. found the

---

4. Exhibit "A" is the hearing notice sent to A.B.'s parents, which alleged that A.B. brought a bomb threat to the Middle School on or about January 12, 2006. (R.R. at 110a.)

5. I note that the record would not support such a finding. The record indicates that, before the state trooper showed the note to A.B. in order to question her about the hand-

note or that A.B. reported the note to a teacher.[6]

Fifth, the School Board found as a fact that the "aforementioned conduct" violates the school policy against terroristic threats. (Findings of Fact, No. 5.) The "aforementioned conduct" was: (1) writing the note; and (2) placing it in a bathroom. The school policy prohibits communicating a threat to commit violence with the *intent to terrorize another, to cause the evacuation* of a building or to cause serious public inconvenience. However, the School Board made no finding of fact regarding A.B.'s intent.

Because the School Board has failed to make necessary findings of fact, I submit that this case, *at least,* should be remanded for the making of such findings. However, as explained below, I conclude that the School District failed to present sufficient circumstantial evidence to prove that A.B. placed the note in the bathroom; thus, ultimately, I see no reason to remand.

## II. Inadequate Circumstantial Evidence

In relying upon circumstantial evidence to reasonably infer a factual conclusion, the evidence must be adequate to establish the conclusion and must so preponderate in favor of that conclusion so as to *outweigh* any other evidence and *inconsistent reasonable inferences.*[7] *Monaci v.*

*State Horse Racing Commission,* 717 A.2d 612 (Pa.Cmwlth.1998).

With respect to who placed the note in the bathroom, one could draw three reasonable inferences from the circumstantial evidence: (1) A.B., acting alone, placed the note in the bathroom; (2) one or more other students placed the note in the bathroom, and A.B., being involved with the bomb threat, knows the identity of the student or students; or (3) one or more other students placed the note in the bathroom, and A.B., having no involvement with the bomb threat, does not know the identity of the student or students.

Thus, if the majority is correct that the circumstantial evidence in this case is sufficient to prove that A.B., acting alone, placed the note in the bathroom, the evidence must "tip the scale" in favor of that conclusion so as to outweigh the possibility that other students were involved. In other words, the evidence must show that it is *more likely than not* that A.B., acting alone, placed the note in the bathroom. For the reasons that follow, I submit it is *just as likely* that one or more other students placed the note in the bathroom.

First, the majority concludes that it is more likely than not that A.B., acting alone, placed the note in the bathroom because: (1) A.B. initially denied that she wrote the note; (2) A.B. then admitted that she wrote the note; (3) A.B. found the note; and (4) A.B. reported the note to a teacher. However, the majority does not

---

writing, the state trooper asked A.B. whether she had anything to do with "this." (R.R. at 46a.) A.B. denied any knowledge of "it." (R.R. at 47a.) The question was *not* specifically whether A.B. wrote the note, but whether A.B. was the perpetrator, or one of the perpetrators, of the bomb threat.

6. As the majority indicates, circumstantial evidence is "evidence of one *fact,* or of a set of *facts,* from which the existence of the *fact* to be determined may reasonably be inferred."

(Majority op. at 677 n. 8) (emphasis added). In other words, circumstantial evidence is evidence that supports *findings of fact* from which the ultimate finding of fact may reasonably be inferred.

7. I note that, although the majority relies on *Monaci v. State Horse Racing Commission,* 717 A.2d 612 (Pa.Cmwlth.1998), for the rule of law governing circumstantial evidence, the majority has ignored this element of the rule.

explain *why* this particular evidence makes it more likely than not that A.B. placed the note in the bathroom. Given such evidence, it is *just as likely* that A.B. was involved with one or more other students in planning a bomb threat and that one or more of the other students placed the note in the bathroom. It is *just as likely* that A.B., a very good student with no history of attendance or disciplinary problems, did not initially recognize the note that she had written two weeks earlier while joking with friends and that she reported the note out of true concern for the school's safety. In my view, the majority simply has not identified sufficient competent evidence to "tip the scale" in favor of a conclusion that A.B., acting alone, placed the note in the bathroom.

Second, the state trooper who testified for the School District did *not* think that A.B. placed the note in the bathroom. He testified as follows:

Q. Did she ever acknowledge that [the note] was, in fact, her note?

A. Yes.

Q. But she never said that she put it in the bathroom?

A. No, she did not.

Q. You never did get her to admit to that?

A. No, she did not.

Q. But you think that she did?

A. *I believe there is something more she knows that she's not telling us. She knows what happened to the note after she wrote it.*

(R.R. at 71a–72a) (emphasis added). The state trooper's testimony suggests that he inferred from the evidence that: (1) one or more other students was involved in the bomb threat; (2) one or more other students placed the note in the bathroom; (3) A.B. knows the identity of the student or students; and (4) A.B. is protecting the other student or students.

Third, students had been making bomb threats at the high school. On the same day that A.B. reported finding the note in the bathroom, a student reported to Principal Raykie that he overheard Middle School students talking about bomb threats on the school bus. Then, significantly, one week after A.B. was suspended as a result of her note, someone else left a similar bomb threat note in the bathroom. The discovery of a second note establishes *without a doubt* that at least one other Middle School student would have been capable of placing A.B.'s note in the bathroom the previous week.

Finally, the School District did not present any expert testimony to explain what would compel a good student without any history of attendance or disciplinary problems to make a bomb threat. Absent such testimony, I consider a lesson about human nature from medieval literature. In Book II of Augustine's *Confessions,* Augustine tells a story from his childhood about a pear tree heavily laden with fruit. The fruit was neither tempting for its color nor tempting for its flavor. Nevertheless, late one night, Augustine and his young companions went to the tree, shook it and ran away with great quantities of the fruit. The boys ate some of the pears but fed most of them to the swine. Reflecting on this episode later in life, Augustine states, "[B]y myself alone I would not have done it—I recall what my heart was—alone I could not have done it." *Confessions,* Bk. II, ch. viii, ¶ 16. Reflecting on these words and the absence of any evidence to explain why A.B. would have acted alone to carry out a bomb threat, it appears to me *more*

*likely than not* that one or more other students placed A.B.'s note in the bathroom.

Because I conclude that the circumstantial evidence in this case does not so preponderate as to outweigh inconsistent reasonable inferences, I would affirm.