# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pennsylvania State Police, | : | |
| Petitioner | : | |
| | : | No. 841 C.D. 2015 |
| v. | : | Submitted: October 2, 2015 |
| | : | |
| Richard Brandon, | : | |
| Respondent | : | |

BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: November 24, 2015**

In this appeal, the Pennsylvania State Police (PSP) asks whether an Administrative Law Judge (ALJ) in the Office of Attorney General (OAG) erred in ordering the PSP to remove from the Pennsylvania Instant Check System (PICS) database, as it pertains to Richard Brandon (Brandon),[1] the disability imposed by Section 6105(c)(4) of the Uniform Firearms Act (UFA), 18 Pa. C.S. §6105(c)(4) (generally stating that an individual who has been involuntarily committed to a mental institution for inpatient care and treatment under Sections 302, 303 or 304 of the Mental Health Procedures Act[2] (MHPA), may not possess a firearm).

---

[1] No party sought to amend the caption to use only Brandon's initials.  Indeed, in his multiple filings in this case, Brandon refers to himself by name.

[2] Act of July 9, 1976, P.L. 817, as amended, 50 P.S. §§7302, 7303, 7304.

In particular, the PSP asserts it met its burden of proving Brandon was properly denied a license to carry concealed firearms by presenting records from a county mental health department and other supporting documentation, which indicates Brandon was twice involuntarily committed under Section 302 of the MHPA. Because we are unable to conduct effective appellate review, we vacate the ALJ's order and remand to the OAG for further consideration.

In September 2013, Brandon applied for a license to carry a firearm with the Butler County Sheriff's Office, prompting a search of the PICS database. Brandon's application was denied after a search of the PICS database revealed two purported involuntary commitments. After the PSP denied his challenge to the PICS information based on mental health commitments in 1987 and 1994, Brandon appealed to the OAG. A hearing ensued before the ALJ.

The ALJ's decision contains no factual findings. As such, we set forth the following summary of the evidence presented at the hearing. The PSP presented the testimony of Marlin W. Rose (Rose), the Mental Health Emergency Coordinator for Butler County (County), who attends all mental health commitment hearings and coordinates those proceedings for the County. Rose explained his office is instrumental in obtaining the warrants necessary for proceedings under Section 302 of the MHPA. Rose identified two County Incident Report Emergency Services (IRES) forms for Brandon. The IRES form is a document regularly generated by Rose's office. The IRES forms are regularly submitted by the County's mental health delegates to Rose's office.

2

As to the two IRES forms pertaining to Brandon, Rose testified that one form pertained to an incident in June 1994, which revealed Brandon was involuntarily committed under Section 302 of the MHPA. The 1994 IRES form indicated that PSP Trooper Daniel Herr petitioned for the Section 302 involuntary commitment, signifying he considered Brandon a clear and present danger to himself and others. Rose confirmed that his office would not complete an IRES form indicating a Section 302 disposition unless a physician certified that the individual was severely mentally disabled.

In addition, Rose explained, his office had a second IRES form pertaining to Brandon, which was generated in 1987. The 1987 IRES form indicated that Brandon was subject to a Section 302 involuntary commitment and transferred to a medical facility for treatment. Rose again confirmed that the disposition on the 1987 IRES form would not indicate a Section 302 involuntary commitment unless a physician certified Brandon was severely mentally disabled and recommended inpatient care.

On cross-examination, Rose explained the IRES form is completed after an entire incident transpired. Rose acknowledged the County's mental health department did not have any other documents, including the underlying Section 302 petition, pertaining to Brandon. Rose explained that during the timeframe at issue, his office would not receive a copy of the actual Section 302 petition; however, the process subsequently changed. Rose indicated he had no knowledge of any entity having a Section 302 petition for Brandon. On re-direct examination,

Rose testified his office has an obligation to notify PSP whenever an individual is involuntarily committed.

In response to a question from the ALJ, Rose further testified it was a "possibility" that a Section 302 petition for Brandon could be found at either one of the two facilities that treated him for the 1987 and 1994 incidents. Reproduced Record (R.R.) at 44a. The ALJ then admitted into evidence the two IRES forms pertaining to Brandon.

The PSP also presented the testimony of Christopher Clark (Clark), who is employed by the PSP in the PICS Challenge Section. PSP's PICS Challenge Section handles all the appeals from denials of firearm purchases or licenses to carry firearms. Clark explained Brandon was initially denied a license to carry a firearm based on two mental health commitments. Clark confirmed the PSP received notice of both of Brandon's involuntary commitments, which were reflected in the PSP's mental health database.

The PSP also presented a police report indicating that Brandon was transported to Butler Memorial Hospital for treatment and placed in the psychiatric wing after treatment. Brandon's counsel objected on the basis of hearsay because the police officer was not available to testify. However, the ALJ accepted the document and noted the objection. PSP's counsel reiterated that he only sought to admit the brief portion of the police report that stated Brandon was transported to the hospital for treatment and placed in the psychiatric wing after treatment.

On cross-examination, Clark explained the notices pertaining to Brandon's involuntary commitments did not indicate the dates the PSP received them because, for historical data prior to 1998, the PSP only received notices of the commitments. As a result, Clark did not know the exact date the PSP received the information concerning Brandon's commitments; however, it appeared the PSP received the records in 1999 when the records were actually entered into the PSP's database. Clark also confirmed he had no records of Brandon previously obtaining a license to carry a firearm. Clark further testified the PSP did not have any Section 302, 303 or 304 petitions for Brandon.

On re-direct examination, Clark explained the PSP did not receive Section 302 petitions from counties prior to 1998. Rather, transmission of that information became a requirement after the effective date of the PICS system. After that date, counties were required to transmit prior commitment information to the PSP. Further, in response to questions from the ALJ, Clark explained that an individual at the PSP inputs the data concerning involuntary commitments into the PICS database, and information can only be entered if the PSP receives a copy of an involuntary commitment from a hospital.

The PSP's counsel also indicated that the PSP issued a subpoena for Brandon, seeking to present him as a witness in its case-in-chief. Brandon's counsel objected on the ground that it was PSP's burden to establish a Section 302 petition existed, and it could not produce any such petition. Thus, Brandon's counsel asserted the PSP could not meet its burden regardless of whether Brandon testified. Brandon's counsel also objected on the ground the PSP began to

criminally charge individuals for making false statements on forms when attempting to purchase a firearm or obtain a license to carry a firearm. As such, he objected on the ground that Brandon was asserting his Fifth Amendment privilege against self-incrimination as Brandon could be implicated by any testimony the PSP sought to elicit. In response, the ALJ stated, because Brandon could potentially subject himself to criminal prosecution by testifying, he had a right to invoke his Fifth Amendment right not to do so.

The parties also presented oral argument in support of their positions. Brandon's counsel asserted there were no Section 302 petitions presented. He argued that in the absence of a Section 302 petition, the PSP previously admitted in another case that it could not meet its burden to establish an individual was involuntarily committed. Specifically, Brandon's counsel asserted that in an earlier federal case, a deputy attorney general representing the PSP entered into a settlement agreement acknowledging that, absent a Section 302 petition, the PSP could not meet its burden. See R.R. at 82a-84a. Because the PSP produced no Section 302 petition here, Brandon maintained, it could not meet its burden.

In response, the PSP's counsel explained that, in general, when the PSP creates a settlement agreement, the language of the agreement indicates it is not binding on the agency. Additionally, the PSP's counsel argued that, based on the preponderance of the evidence standard applicable in this administrative agency proceeding, the PSP met its burden of proving Brandon was subject to two prior involuntary commitments.

6

Specifically, the PSP asserted that Rose testified counties do not report matters to PSP unless they involve 302 proceedings and involuntary commitments. And, counties wait until after the conclusion of a Section 302 proceeding to do so. Here, the PSP's counsel argued, there was a Section 302 disposition as indicated on the two IRES forms. The PSP's counsel further explained that, if this matter was before a federal or state trial court on an expungement matter, the outcome might be different; however, in an administrative agency proceeding such as the one at issue here, based on the totality of the evidence, denial of Brandon's appeal was appropriate.

A day after the hearing, the ALJ issued an order in which he denied Brandon's appeal. Brandon subsequently filed an emergency motion for reconsideration and stay pending reconsideration in which he again asserted that, in the absence of a Section 302 petition, the PSP could not meet its burden of proving he was prohibited from obtaining a license to carry a firearm. The ALJ granted a stay pending reconsideration, and he directed the parties to file letter briefs in support of their positions.

After the submission of the briefs, the ALJ issued an order in which he sustained Brandon's appeal. The PSP now petitions for review to this Court.[3]

---

[3] After the PSP filed its petition for review to this Court, Brandon filed an application for summary relief, seeking dismissal of the PSP's petition for review on the ground that the PSP sets forth no valid basis upon which to reverse of the ALJ's decision. The undersigned denied Brandon's motion in July 2015.

Generally, under Section 302 of the MHPA, an emergency mental examination of a patient may be undertaken where a physician certifies an examination is needed or an authorized county administrator approves a warrant for examination. R.H.S. v. Allegheny Cnty. Dep't of Human Servs., Office of Mental Health, 936 A.2d 1218 (Pa. Cmwlth. 2007) (citing 50 P.S. §7302). A patient must be examined within two hours after arrival at a treatment facility. Id. If the examination reveals the patient needs treatment, it must begin immediately. Id. If treatment is not necessary, the patient must be discharged. Id. In any event, the patient must be discharged within 120 hours unless it is determined further treatment is necessary or the patient voluntarily seeks additional treatment. Id.

Further, Section 6105 of the UFA states, in relevant part (with emphasis added):

**(a) Offense defined.--**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

\* \* \* \*

(c) Other persons.--In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):

\* \* \* \*

8

(4) A person who has been adjudicated as an incompetent or who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302, 303 or 304 of the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the Mental Health Procedures Act. This paragraph shall not apply to any proceeding under section 302 of the [MHPA] unless the examining physician has issued a certification that inpatient care was necessary or that the person was committable.

18 Pa. C.S. §6105(a)(1), (c)(4).

On appeal, the PSP argues it met its burden of proving that Brandon was properly denied a license to carry concealed firearms by introducing the records from the County's mental health department and other supporting documentation, which indicates Brandon was involuntarily committed under Section 302 of the MHPA after examinations in 1987 and 1994. The PSP asserts the two IRES reports it submitted were intended to be a summation of the entire Section 302 incident. Further, Rose testified that the disposition portion of the report would indicate that there was a Section 302 involuntary commitment only if a doctor certified that Brandon was severely mentally disabled, *i.e.*, a clear and present danger to himself or others, and in need of inpatient treatment. The PSP contends the fully executed involuntary commitments prompted the County to notify the PSP as it was required to do by statute. Thus, the PSP argues, Brandon was properly denied a concealed license to carry a firearm.

"On appellate review, we will affirm the decision of an administrative agency unless constitutional rights were violated, an error of law was committed, the procedure before the agency was contrary to statute, or any finding of fact

made by the agency and necessary to support its adjudication is unsupported by substantial evidence." D'Alessandro v. Pa. State Police, 937 A.2d 404, 409 (Pa. 2007) (citing Section 704 of the Administrative Agency Law (AAL), 2 Pa. C.S. §704; Pa. Game Comm'n v. State Civil Serv. Comm'n (Toth), 747 A.2d 887 (Pa. 2000)).

In City of Philadelphia v. Hinkle, 881 A.2d 22, 26 (Pa. Cmwlth. 2005), this Court explained:

> Under [the standard of review set forth in Section 704 of the AAL], the General Assembly has only allowed courts to substitute their discretion for that of the agency where there is a violation of a constitutional right, where the decision is not in accordance with the law, or it is in violation of procedural rights guaranteed by the [AAL], and where there is no substantial evidence to support the agency decision. Any review of an agency decision must fall within one of those areas.

Further, "[i]ncluded in both the violation of constitutional rights and violation of the procedural rights guaranteed by the [AAL] is the requirement that an agency explain its decision. An agency is already obligated by federal due process to state reasons for its decision." Hinkle, 881 A.2d at 26 (citing Goldberg v. Kelly, 397 U.S. 254 (1970)). Indeed, pursuant to Section 507 of the AAL: "All adjudications of a Commonwealth agency shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail." 2 Pa. C.S. §507 (emphasis added).

Section 507 of the AAL requires that adjudications contain findings of fact that are "sufficiently specific to enable [a reviewing] court … to pass upon

10

questions of law." In re: Petition for Formation of Independent Sch. Dist., 962 A.2d 24, 28 (Pa. Cmwlth. 2008) (quoting Henderson v. Office of Budget, 537 A.2d 85, 86 (Pa. Cmwlth. 1988)). Further, adjudications stating only that a party "failed to present evidence" to meet its burden do not comply with Section 507 of the AAL. Id.

Here, the ALJ's order sustaining Brandon's appeal states, in its entirety:

> **AND NOW THIS** 15th day of May 2015, having heard the appeal of [Brandon], reviewing the briefs of counsel and applying applicable case law to the denial of relief by the [PSP], dated February 14, 2014 the request of [Brandon] for Relief is hereby **SUSTAINED.** [PSP] is hereby ordered to amend the PICS database within 30 days so as to remove, as it pertains to [Brandon], the disability imposed by Subsection (c)(4) of Section 6105, 18 Pa. C.S. [§]6105 (c)(4). A petition for review of this decision in Commonwealth Court must be filed within 30 days of the date of this order.

R.R. at 85a.

The PSP argues that, contrary to the ALJ's decision, it presented substantial evidence to prove that Brandon was properly disqualified from obtaining a license to carry concealed firearms. However, our review of this claim is problematic. To that end, the ALJ set forth no findings or reasons in support of his order, rendering it impossible for this Court to conduct appellate review of the ALJ's adjudication. In the absence of any findings or reasons for the ALJ's order, this Court is left to guess at the ALJ's reasoning for sustaining Brandon's appeal. This is particularly true here where, after hearing, the ALJ initially issued a decision dismissing Brandon's appeal, and after reconsideration, issued a decision

11

sustaining Brandon's appeal, both without explanation.  Further, in this case, the PSP, which bore the burden of proof,[4] was the only party to present evidence, and that evidence could support the grant or denial of Brandon's appeal.[5]  As a result,

[4] See Section 6111.1(e)(3) of the UFA, 18 Pa. C.S. §6111.1(e)(3).

[5] As set forth above, Section 6105(c)(4) of the UFA prohibits a person who was involuntarily committed to a mental institution for inpatient care and treatment under Section 302 of the MHPA from, among other things, possessing or obtaining a license to possess a firearm.  18 Pa. C.S. §6105(c)(4).  This prohibition does not apply to any proceeding under Section 302 unless the examining physician issued a certification that inpatient care was necessary or that the person was committable.  Id.  However, the plain language of Section 6105(c)(4) of the UFA does not require submission of the actual examining physician's certification.  Id.  Rather, the PSP could meet its burden of proof through the presentation of circumstantial evidence.  See, e.g., A.B. v. Slippery Rock Area Sch. Dist., 906 A.2d 674 (Pa. Cmwlth. 2006).  In A.B., this Court explained:

> Circumstantial evidence has been defined as 'evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred,' W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 39, at 242 (5th ed. 1984) in contrast to direct evidence where there is direct eyewitness testimony of the ultimate fact to be determined. Monaci v. State Horse Racing Commission, 717 A.2d 612 (Pa. Cmwlth. 1998). The inference from which the conclusion is derived 'is simply a clear, logical, reasonable and natural conclusion which the trier of fact may embrace or reject based on the evidence in the case.' Bixler v. Hoverter, 491 A.2d 958, 959 (Pa. Cmwlth. 1985); see also Commonwealth v. Shaffer, 447 Pa. 91, 288 A.2d 727 (1972) ('an inference is no more tha[n] a logical tool enabling the trier of fact to proceed from one fact to another.') The facts presented are the foundation of any inference and will determine whether that inference is reasonable. Ellis v. City of Pittsburgh, 703 A.2d 593 (Pa. Cmwlth. 1997).  A party is not entitled to an inference of fact which amounts to nothing more than a guess or conjecture. Flaherty v. Pennsylvania Railroad Co., 426 Pa. 83, 231 A.2d 179 (1967). When properly proved, circumstantial evidence is entitled to as much weight as direct evidence. Commonwealth v. Chambers, 528 Pa. 558, 599 A.2d 630 (1991).

Id. at 677 n.8.  Additionally, the level of proof required to establish a case before the ALJ is the same degree of proof as used in most civil proceedings, i.e., a preponderance of the evidence.
**(Footnote continued on next page…)**

we must vacate the ALJ's May 2015 order and remand for an adjudication that contains findings and reasons for the decision. 2 Pa. C.S. §507; see Independent Sch. Dist. (where secretary's decision on party's petition to transfer portion of borough's school-related services from one school district to another contained no specific findings regarding the evidence, but rather merely set forth conclusory findings indicating party did not submit sufficient information to meet its burden, remand was necessary for adjudication that complied with 2 Pa. C.S. §507); see also Turner v. Civil Serv. Comm'n, 462 A.2d 306 (Pa. Cmwlth. 1983) (where commission's decision merely concluded that police officer's dismissal was for just cause without any findings as to which testimony was found credible, which charges against the officer were substantiated by the evidence, or what facts constituted just cause for dismissal from employment, remand was necessary for findings of fact consistent with Section 555 of the Local Agency Law, 2 Pa. C.S. §555[6]).  We leave to the thoughtful discretion of the ALJ to determine whether to re-open the record for additional circumstantial evidence, such as hospital records.

_____

ROBERT SIMPSON, Judge

_____

**(continued…)**

D'Alessandro v. Pa. State Police, 937 A.2d 404 (Pa. 2007).  A preponderance of the evidence is "such proof as leads the fact-finder ... to find that the existence of a contested fact is more probable than its nonexistence." A.B., 906 A.2d at 677 n.5 (quoting Sigafoos v. Pa. Bd. of Prob. & Parole, 503 A.2d 1076, 1079 (Pa. Cmwlth. 1986)).

Nonetheless, as explained above, because the ALJ did not set forth findings or reasons for his adjudication here, we are constrained to remand this matter. See 2 Pa. C.S. §507.

[6] The language of Section 555 of the Local Agency Law is identical to the language of Section 507 of the Administrative Agency Law, 2 Pa. C.S. §507, which is at issue here.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police, : 
                  Petitioner : 
:   No. 841 C.D. 2015 
v. : 
: 
Richard Brandon, : 
                  Respondent : 

## O R D E R

**AND NOW**, this 24th day of November, 2015, the order of the Commonwealth of Pennsylvania, Office of Attorney General, dated May 15, 2015 in Case No. FAD01163, is **VACATED** and this matter is **REMANDED** for proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

_____
ROBERT SIMPSON, Judge