# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Eric McCrane      :
     :
From the Decision of the Board      :      No. 1749 C.D. 2016
of License and Inspection Review      :      Argued: October 19, 2017
     :
Appeal of: The City of Philadelphia      :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**            **FILED: December 8, 2017**

The City of Philadelphia (City) appeals the order of the Philadelphia County Court of Common Pleas (trial court)[1] reversing the City's Board of License and Inspection Review (Board) decision revoking Eric McCrane's (McCrane) concealed carry firearms license.[2] The City argues the Board's revocation comported with Section 6109 of the Pennsylvania Uniform Firearms Act (Act), 18 Pa. C.S. §6109. The City claims the trial court did not apply the proper legal or evidentiary standards when reviewing the Board decision. It contends the trial court did not defer to the Board as fact-finder, and raised a constitutional challenge to the Act not raised by the parties. The City also challenges the trial court's decision because it held character evidence must comport with Pa.R.E. 405. In addition, it asserts substantial evidence supported the Board's decision. Thus, the City seeks a remand to the trial court with instructions to reinstate the Board decision. Upon review, we affirm.

---

[1] The Honorable Linda J. Carpenter presided.

[2] Peter Saldan was involved in the same incident that resulted in license revocation. His license revocation appeal is docketed at 2131 C.D. 2017.

## I. Background

This license revocation appeal arose from the following incident on November 25, 2014. At 1:00 p.m., police were investigating a report of stolen vehicles when they observed McCrane driving a silver F-150 truck on a public street, with a siren and strobe lights flashing (Incident). When the police did not recognize the vehicle as part of its auto squad unit, Officer Thomas Maminski (Officer) stopped the truck to investigate. Officer called for assistance when he "found some things that he wasn't comfortable with," including a handgun in the front seat, and handguns on the person of McCrane and his passenger, Peter Saldan (Saldan), (collectively, Licensees). Board Hr'g, Notes of Testimony (N.T.), 8/18/15, at 8.

Specifically, after obtaining a search warrant for the vehicle, Officer found the following: three handguns;[3] a couple boxes of ammunition; 65 Police Department "No Parking" signs;[4] an official placard for the Police Department, the reverse of which was a Southeastern Pennsylvania Transportation Authority (SEPTA) placard (N.T. at 33); a hand-held radio; a nightstick; flashlights; 4 sets of plastic zip ties linked as flex cuffs;[5] and, several pages of what appeared to be police flash sheets.[6] Licensees did not explain the presence of the police paraphernalia. Although they worked for SEPTA, Licensees did not claim the items were work-related.

---

[3] The handguns were a 9-mm Glock, a Glock 45-caliber pistol, and a 9-mm Sig Sauer.

[4] These signs, when placed, indicate road construction. Sergeant testified "no one else" had these signs. Notes of Testimony, (N.T.), 8/18/15, at 10.

[5] Flex cuffs are often used in lieu of handcuffs to secure individuals. N.T. at 9.

[6] The "flash sheets" consisted of a yellow notepad like a legal pad. N.T. at 25. They contained descriptions of "hot spots," vehicle descriptions, including license plates, and individual descriptions, (*e.g.*, white male, 6 foot 2). N.T. at 34. The flash sheets appeared to be notes of communications that would come over a police radio.

Following the search, the police arrested Licensees for impersonating a police officer, 18 Pa. C.S. §4912. Based on the Incident, the Police Commissioner, the issuing authority in Philadelphia, revoked Licensees' licenses to carry a firearm.

The next day, the City issued a license revocation notice to McCrane (Revocation). Reproduced Record (R.R.) at 87a. As to the reason, the box checked was "Arrest," followed by the date of arrest, and "impersonating an officer." Id. After a full preliminary hearing before The Honorable Marvin Louis Williams, Municipal Court of Philadelphia, the charges were dismissed for lack of a *prima facie* case (lack of probable cause).

Licensees filed separate appeals to the Board, which held a consolidated hearing. The City presented the testimony of police officers who witnessed the Incident, including Officer, Sergeant James Morrace (Sergeant), and Detective John Logan (Detective) (collectively, Police). Licensees, unrepresented by counsel at the hearing, testified on their own behalf.

Sergeant testified he and Detective were investigating reports of stolen vehicles when they observed a silver F-150 pickup truck with strobe lights in the front grille and an audible police siren. N.T. at 6, 27-28; Bd. Op., Finding of Fact (F.F.) No. 5. He noted, "[t]here were no other vehicles coming in either direction" on the street. N.T. at 6. Because they did not recognize the vehicle as part of the police auto squad unit, Sergeant instructed Officer "to go stop that silver F-150 for further investigation." N.T. at 6-8. At the time of the Incident, Sergeant had no knowledge of Licensees' professions or hobbies. N.T. at 13.

3

Officer testified that based on the vehicle's sirens and lights, he "thought it was an unmarked police car." N.T. at 14. He stopped the vehicle for using the siren. He did not recall the color of the flashing lights. He asked for assistance when he "found some things that he wasn't comfortable with," namely the three firearms in the front seat. N.T. at 8. McCrane owned one weapon, Saldan owned another, and the third weapon was registered to Robert Richy, who was not near the vehicle.

Detective's testimony corroborated that of Officer and Sergeant. He observed Licensees react to spotting the Police by turning off the siren and lights. He believed, based on the police paraphernalia combined with the sirens and lights on the vehicle, that Licensees were attempting to impersonate police officers. Initially, they planned to issue a traffic citation for unauthorized use of lights and sirens on a private vehicle, owned by McCrane and his wife. Detective explained that in response to his inquiry as to where Licensees worked, they answered SEPTA. When asked, "SEPTA Police?," N.T. at 37, McCrane replied no. As Licensees did not reveal their positions with SEPTA, he was unaware they were bus drivers. He acknowledged SEPTA retrieved some items from the truck. N.T. at 39.

Licensees testified they were SEPTA bus drivers, and volunteers on SEPTA's safety committee. McCrane admitted their actions the night of the Incident were "no part of [SEPTA's] safety committee or SEPTA." N.T. at 66. However, he claimed he obtained the "No Parking" signs from SEPTA supervisors, and used the flex ties to hang these signs to clear areas for SEPTA buses. Saldan testified that "[w]e go around, hang signs, no parking, if they are going to paint bus stops, bus

4

zones. We go out and we trim trees if they are hanging low enough to break windshields when buses are going through. And any complaints that the drivers bring to us we go out and handle." N.T. at 53.

McCrane testified "[t]he siren was being played with on a back street" that was isolated. N.T. at 57. Licensees explained they patrolled their neighborhood, offering tips on potential criminal activity to area police. McCrane testified the flash sheets included "two numbers of police officers' cellphones [Officer Chang and Officer Ziggy, N.T. at 60] in the 24th District that we were giving tips to if we saw something going on in our neighborhood." N.T. at 59.

In addition to testimony, the Board received documentary evidence consisting of photos of the police paraphernalia and the revocations. Following the hearing, the Board voted unanimously to affirm both revocations. In support, it issued findings of fact and conclusions of law. The Board found the police paraphernalia "unrelated to their work for SEPTA," F.F. No. 15, and SEPTA "did not issue any of those things." F.F. No. 13. The Board credited testimony from the Police. Insofar as Licensees' testimony was inconsistent with that testimony or the City's other evidence, the Board found it not credible. F.F. No. 16.

Ultimately, the Board concluded the credited evidence established good cause to revoke Licensees' firearms licenses. It concluded Licensees "are individuals whose character and reputation are such that they would be likely to act in a manner dangerous to public safety." C.L. No. 2. It also concluded there was "substantial evidence" to affirm the City's revocation of their licenses. C.L. No. 4.

5

Licensees appealed to the trial court.

The trial court reversed, determining substantial evidence did not support the Board's decision. Specifically, the trial court concluded, "the Board's conclusion that [Licensees'] character and reputation were such they would be likely to act in a manner dangerous to public safety <u>was not based on substantial record evidence</u> …." Tr. Ct. Order, 7/22/16 (emphasis added). It "strictly scrutinized" the evidence and found it speculative. <u>Id.</u>, Reason No. 9. The trial court emphasized that the Board's decision was not based on evidence or reasonable inferences from the circumstantial evidence. Reason Nos. 20-25.

The City appealed the order to this Court.[7] It also appealed the same order as to Saldan, docketed at 2131 C.D. 2016. The matters remain unconsolidated. After argument *seriately*, the City's appeal as to McCrane is ready for disposition.[8]

## II. Discussion

The City argues the trial court, on its own motion, raised a constitutional challenge to the Act, and applied a strict scrutiny standard. It also contends the trial court disregarded the evidentiary standards applicable to agency proceedings when it held the Board was required to comply with the Pennsylvania Rules of Evidence. In addition, the City maintains that substantial evidence supports the Board's decision.

---

[7] On appeal from a trial court's review of a Board adjudication, where it takes no evidence, we must affirm the Board unless its decision violated constitutional rights, was not in accordance with law, or any necessary findings were not supported by substantial evidence. <u>Morley v. City of Phila. Licenses & Inspections Unit</u>, 844 A.2d 637 (Pa. Cmwlth.), <u>appeal</u> <u>denied</u>, 863 A.2d 1150 (Pa. 2004).

[8] Post-argument, the City filed an application to submit argument as to additional authority. Because this Court was aware of the authority at issue, we denied the application as moot.

6

Licensees respond that the trial court properly concluded that the Board's decision was not supported by substantial evidence of record. Licensees argue that a single incident, that does not constitute a crime, and based on assumptions regarding items found in a vehicle, is not sufficient evidence of character or reputation to show they are likely to act in a dangerous manner.

Section 6109 of the Act governs licenses to carry a firearm concealed on one's person or in a vehicle. 18 Pa. C.S. §6109. It provides, in pertinent part:

> (d) Sheriff to conduct investigation.-The sheriff to whom the application is made shall investigate the applicant's record of criminal convictions, shall investigate whether or not the applicant is under indictment for or has ever been convicted of a crime punishable by imprisonment exceeding one year, shall investigate whether the <u>applicant's character and reputation are such that the applicant will not be likely to act in a manner dangerous to public safety</u> and shall investigate whether the applicant would be precluded from receiving a license under subsection (e)(1).
>
> (e) Issuance of license.-
>
> (1) A license to carry a firearm shall be for the purpose of carrying a firearm concealed on or about one's person or in a vehicle and shall be issued if, after an investigation not to exceed 45 days, it appears that the applicant is an individual concerning whom no good cause exists to deny the license. A license shall not be issued to any of the following:
>
> (i) An individual whose <u>character and reputation is such that the individual would be likely to act in a manner dangerous to public safety</u>....

18 Pa. C.S. §6109 (emphasis added). As to revocation, Section 6109(i) provides: "A license to carry firearms may be revoked by the issuing authority for good cause. Notice of revocation shall be in writing and shall state the reason for revocation." Id.

7

This Court determined the legislature intended "to confer discretion [on the Commissioner] empowering [him] to exercise judgment in applying the Act's standards to determine if applicants should be licensed, which discretion also applies to the revocation of a license." Morley v. City of Phila. Licenses & Inspections Unit, 844 A.2d 637, 640-41 (Pa. Cmwlth.), appeal denied, 863 A.2d 1150 (Pa. 2004).

The issue before this Court is whether the record contained substantial evidence to support the Board's determination that Licensees "would be likely to act in a manner dangerous to public safety."[9] 18 Pa. C.S. §6109(e)(1)(i)(emphasis added). The record consists of circumstantial evidence that at one point Licensees satisfied the character and reputation requirement, and thus were granted licenses. In addition, there is evidence regarding the Incident. There is no other evidence of Licensees' character, nor is there any evidence of Licensees' reputation to act in a manner dangerous to public safety.

## A. Applicable Standards

The City argues that the trial court applied higher legal and evidentiary standards when it reversed the Board's decision. It asserts the trial court questioned the constitutionality of the Act, which Licensees did not raise, and applied strict scrutiny when it should have deferred to the agency. Also, the City challenges the trial court's application of the Pennsylvania Rules of Evidence to Board proceedings.

---

[9] The Board's determination in this regard is a mixed question of fact and law. It concluded as a matter of law that Licensees' "character and reputation are such that they would be likely to act in a manner dangerous to public safety" as the statute requires. Bd. Op., 8/19/15, C.L. No. 1. Its conclusions were "[b]ased on the credible evidence of record." C.L. Nos. 1-3. However, assessments of character and reputation are factual determinations that require evidentiary support. Caba v. Weaknecht, 64 A.3d 39 (Pa. Cmwlth. 2013). We review such determinations to discern whether they are adequately supported by the record.

It contends direct evidence of character or reputation is not required to establish good cause for revocation. Further, it maintains circumstantial evidence, and reasonable inferences therefrom, constitutes sufficient evidence to support a conclusion.

### 1. Legal Standards

First, we address the City's challenges to the trial court's legal review. The City repeatedly contends the trial court rewrote the Act and the Local Agency Law, 2 Pa. C.S. §554, when it reversed the Board's decision.

### a. Strict Scrutiny

The City claims the trial court raised a constitutional challenge to the Act, *sua sponte*. In both briefs, it asserts the trial court applied a "Second Amendment Strict Scrutiny Standard." Appellant's Reply Br. at 1; see Appellant's Br. at 11-16.

A "'strict scrutiny' test … require[s] reviewing with care each gun law to determine whether it is 'narrowly tailored to achieve a compelling governmental interest.'" Dist. of Columbia v. Heller, 554 U.S. 570, 688 (2008) (Breyer, J., dissenting op.) (quoting Abrams v. Johnson, 521 U.S. 74, 82 (1997)). Significantly, the trial court did not use the terms "narrowly tailored" or "compelling governmental interest" in its order. Nor did the trial court assess the constitutionality of the Act. Rather, the trial court recognized the revocations implicated the constitutional right to bear arms, noting that right may be restricted. Tr. Ct. Order, Reason Nos. 4-5.

The trial court used the phrase "strictly scrutinize" in reference to how it evaluated the record evidence. Id., Reason No. 9. Specifically, the trial court

9

explained, "this Court has strictly scrutinized whether 'substantial evidence' supported the Board's decision by requiring that the basis for revocation is actually *evidence* and not mere conjecture, nor *solely* based on evidence that would not be considered admissible evidence in a civil proceeding." Id. (italics in original).

From there, the City extrapolates a *sua sponte* constitutional challenge to the Act. In context, it is evident the reference to strict scrutiny was not as to the constitutionality of the Act, but as to the quality of the evidence before the trial court. Accordingly, we wholly reject the City's premise that the trial court applied strict scrutiny to the revocation proceedings.

### b. Administrative Deference

Next, the City argues the trial court did not afford proper deference to the agency proceedings. It claims the trial court disregarded the Board's fact-finding. It also asserts the trial court should have deferred to the Commissioner's discretion.

The Local Agency Law, 2 Pa. C.S. §754, applies to administrative proceedings before the Board. See Morley, 844 A.2d at 639 n.4. A court reviewing a local agency decision, "may not weigh the evidence and substitute [its] judgment for the fact-finder as long as the evidence was sufficient to prove [the matter in dispute]." A.B. ex rel. Bennett v. Slippery Rock Area Sch. Dist., 906 A.2d 674, 678 (Pa. Cmwlth. 2006) (citations omitted).

The City's criticism of the trial court for fact-finding is well-taken to some extent. The trial court arguably engaged in fact-finding when it surmised that

possession of the police paraphernalia could have been for "some innocent purposes, as submitted by [Licensees]." Tr. Ct. Order, Reason No. 18. The trial court also noted the "No Parking" signs were issued to both SEPTA and the Police Department. Id., Reason No. 16. However, the Board found SEPTA did not issue the signs. See Bd. Op., F.F. No. 13.

Additionally, the trial court explained that the Board did not properly consider Licensees' explanations. It noted, "Saldan never 'possessed' any of the items, but was merely a passenger, and that McCrane legitimately possessed some, but not all of the items, was not using any flashing lights and that he was using, albeit stupidly, the siren on an unpopulated street for 'fun.'" Tr. Ct. Order, Reason No. 21. In so doing, the trial court credited Licensees' testimony over the contrary testimony of the Police that the vehicle had flashing lights. Such credibility determinations are the province of the Board as fact-finder. Slippery Rock Area Sch. Dist.

To the limited extent the trial court mixed fact-finding with its reasons for reversal, the trial court erred. However, such minimal fact-finding does not constitute reversible error when it did not affect the result. Ultimately, the trial court reversed because the Board's determinations of Licensees' character or reputation were not supported by the record evidence.

Moreover, we view this part of the trial court's discussion as part of its duty to evaluate the reasonableness of the inferences drawn by the fact-finder. Where, as here, the burdened party relies on circumstantial evidence to make its proof, the "circumstantial evidence must be adequate to establish the conclusion

11

sought <u>and must so preponderate in favor of that conclusion as to outweigh any other evidence and reasonable inferences therefrom which are inconsistent therewith.</u>" <u>Flagiello v. Crilly</u>, 187 A.2d 289, 290 (Pa. 1963) (emphasis added). Viewed in this light, it was permissible for the trial court to evaluate reasonable inferences inconsistent with those drawn by the fact-finder to test which inferences preponderated.

Nevertheless, as to the City's argument that the trial court was *required* to defer to the Commissioner's revocation judgment under the Act, we clearly disagree.

Administrative deference, which recognizes an agency's expertise, does not mean agency decision-making is unbridled. A Commissioner's revocation decision "must be uph[e]ld" only "[w]hen <u>evidence supports a conclusion</u> that a firearm licensee does not possess the requisite character and reputation to carry a firearm ...." <u>Tsokas v. Bd. of License & Inspection Review</u>, 777 A.2d 1197, 1202 (Pa. Cmwlth. 2001) (emphasis added). Thus, while a Commissioner has the discretion to revoke a firearms license, his decision will not be upheld by the Board unless adequately supported by record evidence. <u>Id.</u>

## 2. Evidentiary Standards

Local agencies are "not bound by technical rules of evidence" at agency hearings. 2 Pa. C.S. §554; <u>Harris v. Sheriff of Delaware Cnty.</u>, 675 A.2d 400, 401-02 (Pa. Cmwlth. 1996) (upholding revocation based on reports showing licensee had reputation as a cocaine dealer for several years). Generally, agencies are not held to

12

admissibility standards under the Pennsylvania Rules of Evidence. Cf. Walker v. Unemployment Comp. Bd. of Review, 527 A.2d 366 (1976) (hearsay evidence, properly objected to, cannot support an agency determination).

### a. Substantial Evidence

"An agency's findings need not be supported by uncontradicted evidence, so long as they are supported by substantial evidence." Balshy v. Pa. State Police, 988 A.2d 813, 835 (Pa. Cmwlth. 2010). When substantial evidence supports agency findings, they bind an appellate court. "Additionally, we view the evidence and all reasonable inferences arising from the evidence in the light most favorable to the prevailing party," meaning the party that prevailed before the fact-finder. Id. (citing Bosnjak v. State Civil Serv. Comm'n, 781 A.2d 1280 (Pa. Cmwlth. 2001)).

"Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion." In re Collegium Found., 991 A.2d 990, 992 n.6 (Pa. Cmwlth. 2010). Stated differently, "[s]ubstantial evidence is more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established." U.S. Nat'l Bank Ass'n v. United Hands Cmty. Land Trust, 129 A.3d 627, 632 (Pa. Cmwlth. 2015) (emphasis added). Indeed, "evidence proving 'suspicion and conjecture' does not constitute substantial evidence as a matter of law." Id.

Circumstantial evidence is "evidence of one fact, or of a set of facts from which the existence of the fact to be determined may reasonably be inferred." Monaci v. State Horse Racing Comm'n, 717 A.2d 612, 618 (Pa. Cmwlth. 1998)

13

(citation omitted).  This is in contrast to direct evidence, such as firsthand testimony, of the ultimate fact to be determined.  "When properly prove[n], circumstantial evidence is entitled to as much weight as direct evidence."  Id. (citing Commonwealth v. Chambers, 599 A.2d 630 (Pa. 1991)).

As observed above, to reasonably infer a fact from circumstantial evidence, "the evidence must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion so as to outweigh … any other evidence and reasonable inferences therefrom which are inconsistent therewith."  Flagiello, 187 A.2d at 290 (emphasis added).

The trial court concluded that circumstantial evidence "to *infer* that particular conduct *must have* occurred, to then *infer* character[,] to then *infer* future dangerousness can never properly be evidence pursuant to Rule 405(b)(1)."  Tr. Ct. Order, Reason No. 23 (italics in original).  It concluded three inferences rendered the circumstantial evidence too speculative to constitute adequate evidence to support a conclusion.  We agree.

Relevant here, the legal conclusion of "good cause" for revocation of a firearms license is predicated upon findings that the licensee has a character or reputation showing the licensee would be likely to act in a dangerous manner.  The first step is showing the licensee's character and reputation.

This Court determined that the Act required proof of character and reputation to support revocation. Caba v. Weaknecht, 64 A.3d 39 (Pa. Cmwlth. 2013)

14

(revoking license based on character/reputation evidence). In Caba, we recognized that, as used in the statute, character and reputation are related concepts.

Here, the City presented evidence related to the Incident. In that regard, the City offered no record evidence as to either Licensees' character or reputation other than the single event of driving down a deserted back street with a siren and flashing lights operating, and the presence of alleged police paraphernalia in McCrane's vehicle. The operation of an unauthorized siren is a traffic violation, not a crime.

Based on the single event, the Board drew an inference that Licensees engaged in the crime of attempting to impersonate police officers. However, there was no evidence that Licensees were dressed like police officers, displayed badges, offered identification as police officers, or even interacted with another person at all. See 18 Pa. C.S. §4912 (element of crime of impersonating public servant is acting with intent to induce another to submit to pretended official authority or otherwise to act in reliance upon that pretense to his prejudice). Thus, it is not surprising that charges were dismissed against Licensees at the preliminary hearing stage. Worse, from the inference of a crime, the Board further inferred dangerous character. However, there was no evidence that either Licensee touched or displayed a weapon, uttered any verbal threats, made threatening motions, or otherwise acted in a dangerous manner. Also, there was no evidence of Licensees' reputation.

The trial court deemed it significant that there was no actual evidence that Licensees impersonated a police officer; however, this does not demonstrate that

15

the trial court held the Board to a higher evidentiary standard. The trial court noted the lack of direct evidence when it assessed whether the inferences drawn by the fact-finder preponderated over inconsistent reasonable inferences. Flagiello. The trial court thus properly assessed whether the evidence was adequate to support the Board's conclusion that Licensees' firearms licenses were revoked for good cause.

### b. Pa. R.E. 405

Rule 405 allows the admission of specific acts to show character in civil proceedings where character is an essential element of a claim or defense. Pa.R.E. 405. Firearms license revocation proceedings are civil proceedings where character is directly in issue. Caba.

Here, the City challenges the trial court's application of Rule 405 to Board proceedings. The trial court reasoned,

> where the revocation of a citizen's license to carry a firearm is based solely on allegations of 'character and reputation,' the City must present evidence that comports with Rule 405 of the Rules of Evidence. Such evidence must be based on specific acts that can reliably provide evidence of unfit character. To hold otherwise, would deprive individuals who lawfully obtained permits, their right to possess a firearm within the [City] based on mere conjecture. Conjecture is not 'evidence' much less substantial evidence.

Tr. Ct. Order, Reason No. 25 (emphasis added).

The Caba Court discussed the application of Rule 405(b) to firearms license revocation proceedings. In Caba, this Court held license revocation

16

proceedings are a civil proceeding where instances of specific conduct may be used to show character or fitness for gun ownership. As a result, this Court rejected a licensee's challenge to the introduction of evidence regarding a specific incident where he retrieved his weapon during a parking lot altercation. The witness testified Caba grabbed his gun, and put a round in the chamber, and followed the individual "with his gun raised above his waist and pointed in front of him." Id. at 43. We reasoned the trial court was permitted to consider the evidence of one act under Pa.R.E. 405.

However, Caba is distinguishable. In Caba, the trial court served as the fact-finder on appeal from a sheriff's revocation decision. Thus, the trial court in Caba properly determined the admissibility and weight of evidence. By contrast, here, the trial court was sitting in an appellate capacity, reviewing whether the Board's decision was supported by substantial evidence.

While the trial court here overstated the need for an agency to comply with formal rules of evidence, we discern no reversible error in such a reference. The trial court was permitted to evaluate the reliability of the evidence on which the fact-finder relied as part of its evaluation of whether the conclusions inferred were supported by the record. Flagiello. Stated differently, as part of its evaluation of inconsistent reasonable inferences, the trial court could view inferences based on evidence that conformed with the Pennsylvania Rules of Evidence as more trustworthy.

17

## B. Sufficiency of Evidence

Lastly, we consider whether the trial court erred in holding the Board's decision as to Licensees' revocations was based on findings, or mixed findings and conclusions, unsupported by substantial evidence.

Revocation is appropriate if it is evident that a permit was issued to an individual "whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety." 18 Pa. C.S. §6109(e) (emphasis added). The question before this Court is whether the record contains evidence adequate to show Licensees possess a character and reputation that shows the likelihood of Licensees *acting* in a dangerous manner.

A review of other revocation decisions illustrates the type of evidence considered sufficient to support a firearms license revocation.

In Gardner v. Jenkins, 541 A.2d 406 (Pa. Cmwlth. 1988), the licensee pulled a gun when plumbers were performing work in his home. He waved it around at the plumbers, and announced that it was how he got work done. That act involved the weapon, a threat of using it, and a potential danger to society because the licensee used it in an unsafe manner while in an agitated state.

In Morley, the licensee was in a bar when he lost his temper and became involved in an altercation. He drew his gun after assaulting another patron, chambered a round, and ordered everyone to leave the bar. The incident involved the weapon, and acts of brandishing the weapon, and threatening others while

18

holding the weapon.  The threats, and the chambering of a round, supported an inference that the licensee was likely to act in a dangerous manner.

In Smith v. Nace, 824 A.2d 416 (Pa. Cmwlth. 2003), the licensee was involved in a road rage incident.  At the hearing on the revocation appeal, the other motorist testified that he and the licensee were traveling at about two miles per hour when the licensee refused to let him merge.  He was within 15 or 20 feet when the licensee lifted a gun and waved it in the air, and then slammed it on the dashboard and sped in front of the motorist.  The motorist called 911.  The trooper who later stopped the licensee testified as to the licensee's argumentative and sarcastic demeanor.  He was so concerned that for the first time in his career, he called the sheriff at home to report the incident.  The trial court affirmed the revocation, finding that the licensee used poor judgment, and used "the firearm in a manner to impress or perhaps threaten the [motorist]."  Id. at 418.  The licensee brandished a gun while driving.  This incident involved expressions of anger and implied threat of using the weapon.

In Tsokas, the licensee's license was revoked based on numerous incidents over a number of years.  The incidents included:  brandishing his gun; threatening to shoot two men; showing his gun to children playing; and, pulling his gun on a person he thought was breaking in.  During the break-in incident, the licensee threatened: "I'll blow your brains out."  777 A.2d at 1199.  These incidents involved the weapon, and the use of poor judgment while handling the weapon.  Crucially, the licensee threatened to kill another person.  These acts show a likelihood that the licensee would act in a dangerous manner.

19

The circumstances here are readily distinguishable from these cases.

The standard under the Act requires evidence as to the likelihood of acting in a dangerous manner. Although direct evidence is not required, there must be evidence sufficient to support an inference that Licensees were likely to act in a dangerous manner. Moreover, such an inference must be reasonable. Based on prior cases addressing the character and fitness to carry a firearm, it is evident courts consider how licensees used the weapon and whether there was threatening conduct.

Here, the Incident did not involve the use or display of firearms. Licensees did not brandish their weapons, as in Morley and Smith, or threaten to use their weapons as in Caba, Gardner or Tsokas. They did not engage in a criminal activity, like the reputed drug dealer in Harris.

In sum, the record here does not support an inference of dangerous character. We agree with the trial court's conclusion that multiple layers of inferences renders the Board's inferences no more than speculation. Therefore, we uphold the trial court's order reversing the Board for insufficient evidence of good cause.

### III. Conclusion

For the foregoing reasons, we uphold the trial court's order reversing the Board.

            _____
            ROBERT SIMPSON, Judge

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Eric McCrane      :
                                   :

From the Decision of the Board       :     No. 1749 C.D. 2016
of License and Inspection Review    :
                                   :

Appeal of: The City of Philadelphia    :

# **O R D E R**

**AND NOW**, this 8th day of December, 2017, the order of the Philadelphia County Court of Common Pleas is **AFFIRMED**, and Eric McCrane's firearms license is **REINSTATED**.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Eric McCrane       :
                                     :
From the Decision of the Board       :       No. 1749 C.D. 2016
of License and Inspection Review     :       ARGUED: October 19, 2017
                                     :
Appeal of: The City of Philadelphia  :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**

**DISSENTING OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:** December 8, 2017


As the majority correctly notes:

> This Court determined the legislature intended "to confer discretion [on the Commissioner] empowering [him] to exercise judgment in applying the Act's standards to determine if applicants should be licensed, which discretion also applies to the revocation of a license." *Morley v. Phila. License & Inspections Unit,* 844 A.2d 637, 640-41 (Pa. Cmwlth.), *appeal denied*, 863 A.2d 1150 (Pa. 2004).

Slip op at p. 8.

In the case before the court, I believe that the evidence amply supported the Commissioner's exercise of discretion. Specifically, that evidence can support a determination that Appellant and his companion (the appellant in No. 2131 C.D. 2016) (Appellants) were prevented from impersonating police officers and otherwise

acting in a dangerous manner only because of their timely arrest after "playing" with a siren and flashing lights (if, indeed, that alone is not inimical to public safety). While the evidence could also support a different conclusion, drawing factual inferences and making that ultimate judgment was vested in the Commissioner's sound discretion. Rather than deferring to that discretion, however, Common Pleas substituted its own judgment that Appellants were not dangerous because they had not yet brandished or shot the guns they carried, attempted to handcuff anyone with their flexcuffs or otherwise completed whatever actions they had planned with all the police paraphernalia.

While I disagree with the trial court's apparent view that a permit to carry a gun should not be revoked unless the person has been convicted of a crime or has actually completed a dangerous act, that judgment is not for me, nor for the court of common pleas, but for the Commissioner.

Accordingly, I believe the City's arguments are well taken and I must respectfully dissent.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge